Filed 12/4/17

# IN THE SUPREME COURT OF CALIFORNIA

CITY OF SAN BUENAVENTURA,

      Plaintiff, Cross-defendant
      and Appellant,

      v.

UNITED WATER CONSERVATION
DISTRICT et al.,

      Defendants, Cross-complainants
      and Appellants.

S226036

Ct.App. 2/6 B251810

Santa Barbara County

Super. Ct. Nos. VENCI 00401714,
VENCI 1414739

The California Constitution, as amended by a series of voter initiatives, places limitations on the authority of state and local governments to collect revenue through taxes, fees, charges, and other types of levies. (Cal. Const., arts. XIII A, XIII C, XIII D.) This case concerns the application of these constitutional limitations to a particular kind of local government charge: a statutorily authorized "ground water charge" imposed on well operators by a local water conservation district to fund conservation activities such as replenishing groundwater stores and preventing degradation of the water supply. (See Wat. Code, § 75522.) By statute, charges for pumping groundwater for nonagricultural uses generally must be at least three times the charges for pumping water for agricultural uses. (*Id.*, § 75594.)

**SEE CONCURRING OPINION**

The City of San Buenaventura (more commonly known as the City of Ventura) (City), which pumps large quantities of groundwater for delivery to residential customers, contends that the groundwater pumping charges it pays to its local water conservation district, United Water Conservation District (District), are disproportionate to the benefits it receives from the District's conservation activities. It also contends that it pays a disproportionate share of the costs of those activities by virtue of the three-to-one ratio in Water Code section 75594. The City argues that the charges therefore violate article XIII D of the California Constitution (Prop. 218, as approved by voters, Gen. Elec. (Nov. 5, 1996)), which provides that a charge imposed "as an incident of property ownership," including a "charge for a property related service," may not "exceed the proportional cost" of the service that is "attributable to the parcel" on which the charge is imposed. (Cal. Const., art. XIII D, §§ 2, subd. (e), 6, subd. (b)(3).) In the alternative, the City argues that the charges violate article XIII C of the California Constitution (as amended by Prop. 26, as approved by voters, Gen. Elec. (Nov. 2, 2010)), which provides that local government charges are taxes that generally must be approved by voters, but exempts from this category those charges that are limited to the reasonable costs of providing a special benefit or service and that bear a "fair or reasonable" relationship to the benefit to the payor of, or the payor's burden on, the government activity (Cal. Const., art. XIII C, § 1, subd. (e)(1) & (2)). The City argues that the groundwater pumping charges do not satisfy the criteria for exempt charges, and therefore should be considered unapproved taxes imposed in violation of the Constitution.

The Court of Appeal rejected both arguments. We conclude, as did the Court of Appeal, that article XIII C, as amended by Proposition 26, rather than article XIII D, supplies the proper framework for evaluating the constitutionality of the groundwater pumping charges at issue in this case. But because the Court

2

of Appeal did not address the City's argument that the charges do not bear a fair or reasonable relationship to the payor's burdens on or benefits from the District's conservation activities, as article XIII C requires, we affirm in part, reverse in part, and remand for consideration of that question.

## I.

## A.

The District is a water conservation district formed under the Water Conservation District Law of 1931 (Wat. Code, § 74000 et seq.), to " 'manage, protect, conserve and enhance the water resources of the Santa Clara River, its tributaries and associated aquifers, in the most cost effective and environmentally balanced manner.' " The District's territory, which covers approximately 214,000 acres in central Ventura County, encompasses all or part of eight groundwater basins.[1]

Like many groundwater basins throughout California, basins in the District's territory have suffered from what is known as "overdraft"—meaning that more water is being taken out than is replaced by natural processes, including rainfall and river and stream flow. Overdraft can result in saltwater intrusion into the fresh groundwater supply and can reduce the basin's capacity for groundwater storage. (See Wat. Code, § 75505.) To counteract overdraft and its effects, the District artificially "recharges," or replenishes, the groundwater supply by diverting water from other sources and spreading it over the ground covering certain basins within district boundaries. To reduce the demand for groundwater

---

[1] A groundwater basin is "[a]n alluvial aquifer or a stacked series of alluvial aquifers with reasonably well-defined boundaries in a lateral direction and having a definable bottom." (Dept. of Water Resources, California's Groundwater, Bulletin 118 (2003) p. 216.) An aquifer is "[a] body of rock or sediment that is sufficiently porous and permeable to store, transmit, and yield significant or economic quantities of groundwater to wells and springs." (*Id.* at p. 214.)

extraction, the District also provides pipeline deliveries of water derived from other sources.

The Water Code authorizes water conservation districts to finance their activities by imposing a "ground water charge[]" on "the production of ground water from all water-producing facilities" within the district (or within certain zones in the district). (Wat. Code, § 75522.)[2] Under the code, a district may establish different zones for rate-setting purposes. (*Id.*, § 75591.) Within each zone, the district must charge a uniform rate for all water pumped for agricultural use, and a uniform rate for all water pumped for nonagricultural use. (*Id.*, §§ 75591, 75593.) Subject to an exception not relevant here (*id.*, § 75595), the rate for nonagricultural use must be between three and five times the rate for agricultural use. (*Id.*, § 75594.) Consistent with these provisions, the District imposes a volume-based charge on groundwater pumping within its territory. As required by section 75594 of the Water Code, the District's rates for pumping for nonagricultural use are three times those for pumping for agricultural use.

**B.**

Under the California Constitution, as amended by a series of voter initiatives, local government taxes, fees, charges, and other exactions are subject to several requirements and restrictions. The first of these initiatives, Proposition 13, added article XIII A to the Constitution. Passed in 1978, the purpose of the initiative "was to assure effective real property tax relief by means of an 'interlocking "package" ' consisting of a real property tax rate limitation (art. XIII A, § 1), a real property assessment limitation (art. XIII A, § 2), a

---

[2]     For the purposes of the statute, " 'groundwater' means all water beneath the earth's surface," with certain exceptions not applicable here, as well as "water produced from artesian wells." (Wat. Code, § 75502.5.)

4

restriction on state taxes (art. XIII A, § 3), and a restriction on local taxes (art. XIII A, § 4)." (*Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 872 (*Sinclair Paint*).) The " 'principal provisions' " of the initiative " 'limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited increases in the assessed valuation to 2 percent per year unless and until the property changed hands. (Cal. Const., art. XIII A, §§ 1, 2.)' " (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836 (*Apartment Association*), quoting *Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 681 (*Howard Jarvis*).) " 'To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate. [Citations.]' " (*Apartment Association*, at p. 836; see Cal. Const., art. XIII A, § 4.)

Courts uniformly held, however, that article XIII A did not restrict local governments' ability to impose "legitimate special assessments"—that is, charges levied on owners of real property directly benefited by a local improvement to defray its costs. (*Knox v. City of Orland* (1992) 4 Cal.4th 132, 141.) In part to close this perceived loophole, voters in 1996 passed Proposition 218, which, among other things, " 'buttresse[d] Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges.' " (*Apartment Association*, *supra*, 24 Cal.4th at p. 837, quoting *Howard Jarvis*, *supra*, 73 Cal.App.4th at p. 682.) Article XIII D, added by Proposition 218, imposes certain substantive and procedural restrictions on taxes, assessments, fees, and charges "assessed by any agency upon any parcel of property or upon any person as an incident of property ownership." (Cal. Const., art. XIII D, § 3, subd. (a).) Among other things, article XIII D instructs that the amount of a "fee or charge imposed upon any parcel or person as an incident of

5

property ownership shall not exceed the proportional cost of the service attributable to the parcel." (*Id.*, § 6, subd. (b)(3).)

Proposition 218 also added article XIII C, which restricts the authority of local governments to impose taxes by, among other things, requiring voter approval of all taxes imposed by local governments.[3] In 2010, voters passed Proposition 26, which further expanded the reach of article XIII C's voter approval requirement by broadening the definition of " 'tax' " to include "any levy, charge, or exaction of any kind imposed by a local government." (Cal. Const., art. XIII C, § 1, subd. (e).) The definition contains numerous exceptions for certain types of exactions, including for "property-related fees imposed in accordance with the provisions of Article XIII D" (*id.*, § 1, subd. (e)(7)), as well as for charges for "a specific benefit conferred or privilege granted," or "a specific government service or product" that is provided, "directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government" (*id.*, § 1, subd. (e)(1) & (2)). To fall within one of these exemptions, the amount of the charge may be "no more than necessary to cover the reasonable costs of the governmental activity," and "the manner in which those costs are allocated to a payor" must "bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (*Id.*, § 1, subd. (e).)

---

[3] Article XIII C provides that all taxes imposed by local governments are either general taxes or special taxes (art. XIII C, § 2, subd. (a)), and requires all general taxes to be approved by a majority vote (art. XIII C, § 2, subd. (b)) and all special taxes to be approved by a two-thirds vote (art. XIII C, § 2, subd. (d)). The special taxes covered by article XIII C are not to be confused with the special taxes covered by article XIII A, section 4. The latter category is limited to those special taxes that are assessed upon property or upon a person as an incident of property ownership. (See Cal. Const., art. XIII D, § 3, subd. (a)(2).)

6

## C.

This case arises from a long-running controversy between the City and the District about the District's groundwater pumping charges. In the 1980s, the District planned a major improvement project to divert water from the Santa Clara River for recharge purposes. The District proposed to finance the diversion project by imposing new pumping charges on users within a newly established rate zone comprising areas that would benefit from the project. The City protested, arguing that the proposed zone included a basin on which City wells operated that would not benefit from the project, and filed several lawsuits challenging the District's proposal. In 1987, the parties entered a settlement agreement in which the District agreed to create a second zone for project-related charges in which the rate for nonagricultural use would be set at one-third of the previously announced rate for the first zone—that is, a rate equal to the rate imposed on agricultural users within the first zone. When the settlement agreement expired at the end of 2011, the District eliminated the special zone, resulting in substantially higher pumping rates for groundwater extractors in the affected territory, including the City. After providing notice and inviting comment, the District also increased the general rate for groundwater pumping throughout the district.

The City again filed suit to challenge the pumping charges, contending that the charges violate either article XIII D or, in the alternative, article XIII C of the California Constitution. In support of its contention, the City alleged that it pays more than its fair share of the costs of the District's conservation efforts, both relative to agricultural users by virtue of the three-to-one ratio required under section 75594 of the Water Code, and relative to other users in the district that pump from basins that receive greater benefit from the District's recharge efforts. The City petitioned the court for a writ of mandate under Code of Civil Procedure section 1085 and for a writ of administrative mandate under Code of Civil

7

Procedure section 1094.5, and sought declaratory relief as well as a determination of invalidity under Code of Civil Procedure section 860 et seq. (commonly known as a reverse validation action (*McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165-1166)). The City challenged the 2011–2012 rates and the 2012–2013 rates in separate actions, which were consolidated in the trial court.

The trial court ruled in the City's favor. Relying on *Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364 (*Amrhein*), the trial court concluded that the pumping charges are "imposed on persons as an incident of property ownership" and thus subject to the requirements and restrictions of article XIII D. The trial court concluded, however, that the District's general practice of charging a uniform fee across an area comported with article XIII D's requirement that a property-related fee or charge "not exceed the proportional cost of the service attributable to the parcel" (Cal. Const., art. XIII D, § 6, subd. (b)(3)) because it would be infeasible for the District to attribute the costs of its conservation activities on a parcel-by-parcel basis, and because the charges in the aggregate did not exceed the reasonable costs of the District's conservation activities. But the trial court concluded that the three-to-one ratio mandated by Water Code section 75594 did violate article XIII D's proportionality requirement because the District failed to demonstrate that "the costs relating to agricultural water as compared with non-agricultural water support [the] differential." The trial court entered a declaratory judgment and issued the writs of mandate, ordering the District to refund the City $548,296.22 for charges for the 2011–2012 water year and $794,815.57 for the 2012–2013 water year, plus interest. These represent the amounts the City paid in excess of the District's average costs for all types of water usage.

The Court of Appeal reversed. It held that the pumping charges are not property-related charges or fees within the meaning of article XIII D. The court

8

distinguished *Amrhein,* on which the trial court had relied, as involving "a unique set of facts" not present here. But the court went on to conclude that regardless of the factual setting, "a pump fee is better characterized as a charge on the activity of pumping than a charge imposed by reason of property ownership." (Citing *Orange County Water Dist. v. Farnsworth* (1956) 138 Cal.App.2d 518.) Moreover, the Court of Appeal held that even if the charges were "property-related charges" for purposes of article XIII D, they would not violate article XIII D's requirement that the fee "not exceed the proportional cost of the service attributable to the parcel" by virtue of the three-to-one ratio in Water Code section 75594. (Cal. Const., art. XIII D, § 6, subd. (b)(3).) The court reasoned: "Section 75594 does not discriminate between persons or parcels. It discriminates between types of use. [Citation.] If the City chooses to use its groundwater for agricultural purposes, it too can benefit from the lower rates."

The Court of Appeal further held that the pumping charges are not taxes subject to the requirements of article XIII C. The court concluded that the charges fall within the exception for payor-specific benefits and privileges. The court reasoned that the operative question, for purposes of this exception, is whether the charges in the aggregate exceed the District's costs of providing groundwater management services. The court held that this question was effectively answered by the trial court's finding that the pumping charges in the aggregate do not exceed the District's reasonable costs.

## II.

We begin by considering the City's argument that the District's groundwater pumping charges violate article XIII D, added by Proposition 218. The threshold question for our determination is whether the pumping charges are "imposed . . . upon a parcel or upon a person as an incident of property ownership" within the meaning of article XIII D. (Cal. Const., art. XIII D, § 2,

9

subd. (e).) We conclude that they are not, and that they therefore fall outside the reach of article XIII D.

**A.**

Article XIII D was passed as part of Proposition 218, an initiative designed to buttress Proposition 13's limitation on property taxes. (*Apartment Association*, *supra*, 24 Cal.4th at p. 837.) To that end, article XIII D " 'allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge,' " and places certain restrictions on each kind of exaction. (*Apartment Association*, at p. 837, quoting *Howard Jarvis*, *supra*, 73 Cal.App.4th 679, 682.) The provisions governing fees and charges command that no fee or charge "shall be assessed . . . upon any parcel of property or upon any person as an incident of property ownership" except "[f]ees or charges for property related services" that satisfy the requirements of article XIII D. (Cal. Const., art. XIII D, § 3, subd. (a)(4).) Article XIII D defines " 'fee' or 'charge' " to mean "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service." (*Id.*, § 2, subd. (e).)[4] A " 'property-related service,' " in turn, is defined as a "public service having a direct relationship to property ownership." (*Id.*, § 2, subd. (h).)

A "[p]roperty [r]elated" fee or charge within the meaning of these provisions is subject to several procedural requirements. (Cal. Const., art. XIII D, § 6.) Among other things, an agency that proposes to impose such a fee or charge

---

[4]    Because article XIII D includes a single definition for a " 'fee' or 'charge,' " we use those terms interchangeably here. (Cal. Const., art. XIII D, § 2, subd. (e); see *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 214, fn. 4.)

10

must notify "the record owner of each identified parcel upon which the fee or charge is proposed for imposition" and conduct a public hearing on the proposal. (*Id.*, § 6, subd. (a)(1); *id.*, § 6, subd. (a)(2).)  "If written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge."  (*Id.*, § 6, subd. (a)(2).) "Except for fees or charges for sewer, water, and refuse collection services, no property related fee or charge" may be "imposed or increased" unless it is "approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area."  (*Id.*, § 6, subd. (c).)

A covered fee or charge is also subject to a series of substantive limitations. The revenues derived from the fee or charge may not exceed the funds required to provide the property-related service, nor may they be used for any purpose other than that for which the fee or charge was imposed.  (Cal. Const., art. XIII D, § 6, subd. (b)(1) & (2).)  And in a provision central to the City's challenge in this case, article XIII D provides that the amount of the charge may not "exceed the proportional cost of the service attributable to the parcel."  (*Id.*, § 6, subd. (b)(3).)

Whether an exaction is a property-related charge for purposes of article XIII D "is a question of law for the appellate courts to decide on independent review of the facts."  (*Sinclair Paint*, *supra*, 15 Cal.4th at p. 874.)  We construe the provisions of article XIII D liberally, " 'to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.' "  (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 448.)  The relevant government agency—here, the District—bears the burden of demonstrating compliance.  (Cal. Const., art. XIII D, § 6, subd. (b)(5).)

11

**B.**

In considering whether the District's groundwater pumping charges are property-related fees and charges for purposes of article XIII D, we do not write on a clean slate. We previously addressed the meaning of article XIII D's definition of property-related fees and charges in a trio of cases beginning with *Apartment Association*, *supra*, 24 Cal.4th 830. In that case, we considered whether an apartment inspection fee imposed on landlords of private apartment buildings was a fee imposed "upon a parcel or upon a person as an incident of property ownership" (art. XIII D, § 2, subd. (e)) and thus subject to the requirements of article XIII D. We concluded that it was not. Article XIII D's repeated references to fees and charges imposed " 'as an incident of property ownership,' " we explained, "mean[] that a levy may not be imposed on a property owner as such—i.e., in its capacity as property owner—unless it meets constitutional prerequisites. In this case, however, the fee is imposed on landlords not in their capacity as landowners, but in their capacity as business owners. The exaction at issue here is more in the nature of a fee for a business license than a charge against property. It is imposed only on those landowners who choose to engage in the residential rental business, and only while they are operating the business." (*Apartment Association*, *supra*, 24 Cal.4th at pp. 839–840.)

In the next case in the series, *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409 (*Richmond*), we considered whether a fee for making a new connection to a water system was "imposed 'as an incident of property ownership' " within the meaning of article XIII D. (*Id.* at p. 426.) We again concluded that the fee was not "property-related" for constitutional purposes. We explained that, much as in *Apartment Association*, the fee in question was "not imposed simply by virtue of property ownership, but instead . . . as an incident of

12

the voluntary act of the property owner in applying for a service connection." (*Richmond*, at p. 426.)

In so concluding, we also rejected the challengers' argument that the fee must be "property related" because "user fee[s] or charge[s] for a property related service" are included in article XIII D's definition of property-related fees, and supplying water is a "property related service." (Cal. Const., art. XIII D, § 2, subd. (e).)  We agreed with challengers, as an initial matter, that "supplying water is a 'property-related service' within the meaning of article XIII D's definition of a fee or charge." (*Richmond*, *supra*, 32 Cal.4th at p. 426.)  That view, we noted, finds support in ballot materials for Proposition 218, in which Legislative Analyst opined that " '[f]ees for water, sewer, and refuse collection service probably meet the measure's definition of property-related fee.' " (*Ibid.*)  And the Legislative Analyst's view, in turn, finds support in surrounding provisions of article XIII D, which expressly exempt certain types of utility charges from some or all of its requirements:  section 3, subdivision (b) exempts fees for electrical or gas service from the scope of "charges imposed 'as an incident of property ownership,' " while section 6, subdivision (c) exempts fees for sewer, water, and refuse collection services from article XIII D's voter approval requirements. (*Richmond*, at p. 427, citing Cal. Const., art. XIII D, §§ 3, subd. (b), 6, subd. (c).)

But we explained in *Richmond* that even though "supplying water" is a property-related service, not "*all* water service charges are necessarily subject to the restrictions that article XIII D imposes on fees and charges. . . .  [A] water service fee is a fee or charge . . . if, but only if, it is imposed 'upon a person as an incident of property ownership.' (Art. XIII D, § 2, subd. (e).)  A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property.  But a fee for making a new connection to the system is not

13

imposed 'as an incident of property ownership' because it results from the owner's voluntary decision to apply for the connection." (*Richmond*, *supra*, 32 Cal.4th at p. 427.) That conclusion, we noted, is reinforced by practical considerations: Because a local government agency cannot identify in advance which property owners will seek new connections to the water system, it has no practical means of complying with article XIII D's requirement that the agency "identify the parcels on which the assessment will be imposed and provide an opportunity for a majority protest . . . ." (*Richmond*, at p. 419; see *id.* at pp. 427–428.)

Finally, in *Bighorn-Desert View Water Agency v. Verjil*, *supra*, 39 Cal.4th 205 (*Bighorn*), we considered whether a charge for ongoing water delivery services is a "fee or charge" for purposes of article XIII C, which provides that "the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge" (art. XIII C, § 3), but contains no definition of "fee" or "charge." We held that it is. Reasoning that the category of "fees or charges" subject to article XIII C must include, at a minimum, any fee or charge subject to article XIII D, we reaffirmed what we had said, albeit in dicta, in *Richmond*: A charge for ongoing water delivery is a " 'fee' " or " 'charge' " within the meaning of article XIII D. (*Bighorn*, *supra*, 39 Cal.4th at pp. 215–216, citing *Richmond*, *supra*, 32 Cal.4th at pp. 426–427.) This is so, we concluded, even if the total amount of the bill is usage-based, and thus depends on the customer's "voluntary decisions . . . as to how much water to use": "[O]nce a property owner or resident has paid the connection charges and has become a customer of a public water agency, all charges for water delivery incurred thereafter are charges for a property-related service, whether the charge is calculated on the basis of consumption or is imposed as a fixed monthly fee." (*Id.* at pp. 216–217, fn. omitted.)

14

## C.

Following this trio of decisions, the Courts of Appeal have drawn different conclusions about how to evaluate the constitutionality of groundwater pumping charges under article XIII D. In *Amrhein*, *supra*, 150 Cal.App.4th 1364, the Court of Appeal considered whether a groundwater pumping charge imposed by a local water management agency qualified as a property-related charge subject to article XIII D. On initial hearing, the Court of Appeal, relying primarily on *Richmond* and *Apartment Association*, concluded that the pumping charge was not incidental to property ownership, for three reasons: "(1) it was incurred only through voluntary action, i.e., the pumping of groundwater . . . ; (2) it would never be possible for the Agency to comply with Article XIII D's requirement that it calculate in advance the amount to be charged on a given well; and (3) the charge burdens those on whom it is imposed not as landowners but as water extractors." (*Amrhein*, *supra*, 150 Cal.App.4th at pp. 1385–1386, fn. omitted.) After *Bighorn* was decided, however, the *Amrhein* court granted rehearing and reversed course, concluding that its earlier view was irreconcilable with *Bighorn*'s holding that usage-based water delivery fees are imposed as an incident of property ownership. The court reasoned that the pumping charges at issue were comparable to usage-based water delivery fees, in that both charges are levied based on a property owner's voluntary decision to consume water. (*Id.* at pp. 1388–1389.) And because an "overlying owner possesses 'special rights' to the reasonable use of groundwater under his land," the court explained, a charge on groundwater pumping "is at least as closely connected to the ownership of property as is a charge on delivered water." (*Id.* at pp. 1391–1392.)

The *Amrhein* court allowed that, under *Apartment Association*, it might be argued that a "fee falls outside Article XIII D to the extent it is charged for consumption of a public service for purposes or in quantities exceeding what is

15

required for basic (i.e., residential) use of the property." (*Amrhein*, *supra*, 150 Cal.App.4th at p. 1389.) But the court emphasized that "a large majority" of water extractors in the jurisdiction were using the water for "residential or domestic," rather than business, purposes. (*Amrhein*, at p. 1390; see also *id.* at p. 1397 (conc. opn. of Bamattre-Manoukian, J.) [emphasizing record evidence showing "that the vast majority of property owners in the Pajaro Valley obtained their water from wells, and that alternative sources were not practically feasible"].)[5]

The Court of Appeal in this case, by contrast, concluded that the pumping fee does not qualify as a property-related charge subject to article XIII D. The court distinguished *Amrhein* on the ground that the record in this case contains no comparable indication that the majority of property owners in the District's territory obtain water by pumping it from wells. But the court concluded that a pumping fee is in any event "better characterized as a charge on the activity of pumping than a charge imposed by reason of property ownership." This is true, the court concluded, "even with respect to the individual household that elects to pump water for its own consumption."

---

**5** The court in *Amrhein* cautioned that it was not deciding whether a groundwater pumping charge "is necessarily subject to *all* of the restrictions imposed by Article XIII D on charges incidental to property ownership" since there was "no occasion to determine whether this or a similar charge may fall within any of the express exemptions or partial exemptions set forth in that measure." (*Amrhein*, *supra*, 150 Cal.App.4th at p. 1393, fn. 21.) The Court of Appeal answered this question in the follow-on case of *Griffith v. Pajaro Valley Water Management Agency* (2013) 220 Cal.App.4th 586, 595–596 (*Griffith*). In *Griffith*, the court held that the water management agency's groundwater pumping charge fell within the provision exempting "fees or charges for sewer, water, and refuse collection services" from article XIII D's voter approval requirements. (Cal. Const., art. XIII D, § 6, subd. (c).) The *Griffith* court explained this conclusion flowed from *Amrhein*'s holding that a groundwater pumping charge "does not differ materially 'from a charge on *delivered* water.' " (*Griffith*, *supra*, at p. 595, quoting *Amrhein*, *supra*, 150 Cal.App.4th at pp. 1388–1389.)

16

We conclude that the Court of Appeal in this case has the better of the argument. The critical question is whether the groundwater charge—a charge for the District's conservation and management services—qualifies as a "charge for a property related service." (Cal. Const., art. XIII D, § 2, subd. (e).) The text of article XIII D provides important indications about what sort of service-related charges the voters had in mind. Article XIII D, section 6 tells us, for example, that revenues derived from the fee may not "exceed the funds required to provide the property related service" (subd. (b)(1)); that the amount imposed on any parcel may not "exceed the proportional cost of the service attributable to the parcel" (subd. (b)(3)); and that property owners may not be charged for "potential or future use of a service" (subd. (b)(4)) or for "general governmental services" (subd. (b)(5)). The lesson that emerges from the text and cases is this: A fee is charged for a "property-related service," and is thus subject to article XIII D, if it is imposed on a property owner, in his or her capacity as a property owner, to pay for the costs of providing a service to a parcel of property.

Measured by that yardstick, the groundwater pumping charge at issue here falls short. To be sure, the charge is used for the conservation and management of groundwater, and water is, as we said in *Bighorn*, "indispensable to most uses of real property." (*Bighorn*, *supra*, 39 Cal.4th at p. 214.) But not all fees associated with obtaining water are property-related fees within the meaning of article XIII D; otherwise, *Richmond*, which concerned fees for making connections necessary for obtaining water delivery, would have been decided differently. And while *Bighorn* holds that fees for supplying water through an established connection are property-related service fees, charges for the service the District provides—that is, the conservation of limited groundwater stores, and remediation of the adverse effects of groundwater extraction—are not property-related in the same way: The District does not "deliver" water "via groundwater" to any particular parcel or set

17

of parcels, as the City would characterize it.  The District instead conserves and replenishes groundwater that flows through an interconnected series of underground basins, none of which corresponds with parcel boundaries.  These basins are managed by the District for the benefit of the public that relies on groundwater supplies, not merely for the benefit of the owners of land on which wells are located.  (See Wat. Code, §§ 75521, 75522.)  And as this case demonstrates, these two groups are not one and the same; while some well operators extract water for use on their own property, others, such as the City, extract water for sale and distribution elsewhere.  (Cf. *City of Barstow* (2000) 23 Cal.4th 1224, 1240–1241 [contrasting overlying with appropriative water rights].)

All this means that the District's services, by their nature, are not directed at any particular parcel or set of parcels in the same manner as, for example, water delivery or refuse collection services.  (*Richmond*, *supra*, 32 Cal.4th at p. 426, citing Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by Legis. Analyst, p. 73.)  Put differently, when the District fulfills its statutory functions it is not providing a service to the City in its capacity as the owner of the lands on which its wells are located, but in the City's capacity as an extractor of groundwater from stores that are managed for the benefit of the public.

We see no indication that the voters who approved Proposition 218— thereby, among other things, giving property owners the right to block property-related fees and charges by majority protest (Cal. Const., art. XIII D, § 6, subd. (a)(2))—had this sort of charge in mind.  We therefore conclude that the groundwater charge authorized by Water Code section 75522 is not a charge for a "property-related service" that falls within the scope of Proposition 218.[6]

---

[6]    The City contends that the Legislature implicitly concluded otherwise when it enacted the Sustainable Groundwater Management Act of 2014 (Wat. Code,

*(footnote continued on next page)*

18

## III.

We next turn to the City's argument that the District's groundwater pumping charges violate article XIII C, as amended by Proposition 26. As noted, Proposition 26 expanded the definition of "taxes" requiring voter approval to include a "levy, charge or exaction of any kind," but exempted certain categories of

_____

*(footnote continued from previous page)*

§ 10720 et seq.) (SGMA), which was enacted before the Court of Appeal issued its decision in this case. In SGMA, the Legislature provided that certain newly created "groundwater sustainability agencies" may impose groundwater pumping charges to fund the costs of groundwater management, but subject to the requirements of article XIII D, section 6, subdivisions (a) and (b). (Wat. Code, § 10730.2, subds. (a) & (c).) Omitted from these requirements is article XIII D, section 6, subdivision (c), which generally forbids agencies from imposing new or increased fees unless they first gain the approval of a majority of property owners or two-thirds of the electorate residing in the affected area. It is unclear that by enacting Water Code section 10730.2, subdivision (c) the Legislature intended to express any judgment on the interpretive question before us, as opposed to, for example, signaling its agreement with a post-*Amrhein* appellate ruling that groundwater charges are exempt from article XIII D's voter approval requirement as charges for "water service[s]." (*Griffith*, *supra*, 220 Cal.App.4th at p. 596.) In any event, whatever the Legislature's intent may have been, "the ultimate constitutional interpretation must rest, of course, with the judiciary." (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180.) The Legislature is, of course, free to impose additional requirements by statute.

Furthermore, although we disagree with the trial court that the fee at issue here is a property-related fee within the meaning of article XIII D, and therefore conclude that the fee is not subject to that provision's proportionality requirement, we express no opinion about the trial court's determination that the District's practice of charging a uniform fee across an area because of the infeasibility of allocating costs on a parcel-by-parcel basis complies with that requirement. (See *ante*, at pp. 7–8.)

We disapprove *Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364, and *Griffith v. Pajaro Valley Water Management Agency* (2013) 220 Cal.App.4th 586, insofar as they are inconsistent with this opinion.

19

exactions from its reach, including certain charges imposed for specific government benefits, privileges, services, or products provided directly to the payor. (Cal. Const., art. XIII C, § 1, subd. (e)(1) & (2).) "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (*Id.*, § 1, subd. (e).)

As both parties acknowledge, the language of Proposition 26 is drawn in large part from pre-Proposition 26 case law distinguishing between taxes subject to the requirements of article XIII A, on the one hand, and regulatory and other fees, on the other. (See *Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 262 (*Jacks*).) We described this distinction in *Sinclair Paint*, *supra*, 15 Cal.4th 866 which concerned the proper categorization of fees imposed on manufacturers of lead-containing products (and others) to raise revenue for a statewide lead poisoning evaluation, screening, and follow-up program. We explained that, "[i]n general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted." (*Sinclair Paint*, at p. 874; see Cal. Const., art. XIII C, § 1, subd. (e)(1).) Accordingly, we concluded, a fee does not become a tax subject to article XIII A unless it " ' "exceed[s] the reasonable cost of providing services . . . for which the fee is charged." ' " (*Sinclair Paint*, at p. 876.) We further explained that " 'the basis for determining the manner in which the costs are apportioned' " should demonstrate that " 'charges allocated to a payor bear a fair or reasonable relationship to the payor's burdens on or benefits from the regulatory activity.' " (*Id.* at p. 878, quoting *San Diego Gas & Electric Co. v. San Diego County Air Pollution Control Dist.* (1988) 203 Cal.App.3d 1132, 1146 (*SDG&E*).) Proposition 26 codified both requirements. (See Cal. Const.,

20

art. XIII C, § 1, subd. (e) [to prove fee is not a tax, "local government bears the burden of proving . . . that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity," and "that the amount is no more than necessary to cover the reasonable costs of the governmental activity"].)[7]

Both the trial court and the Court of Appeal concluded that the groundwater pumping charge was exempt from article XIII C's definition of "tax," but for different reasons. The trial court held that the charge falls within the exception for "[a]ssessments and property-related fees imposed in accordance with the provisions of Article XIII D." (Cal. Const., art. XIII C, § 1, subd. (e)(7).) The Court of Appeal concluded that the charge instead falls into the exception for "[a] charge imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege." (*Id.*, § 1, subd. (e)(1).) The court reasoned that the charge is imposed on well operators for the privilege of extracting water from underground reserves, akin to a charge for entrance to a state or local park for purposes of conserving the resource, and that each well operator receives a benefit from the District's conservation activities.

---

[7]     As we recognized in *Jacks*, *supra*, 3 Cal.5th at page 262 and footnote 5, although Proposition 26 codifies *Sinclair Paint* in significant part, Proposition 26 describes categories of charges imposed for reasonable regulatory costs in a manner that "does not mirror our discussion of such costs in *Sinclair Paint* [citation]." (See Cal. Const., art. XIII C, § 1, subd. (e)(3) [exempting from the definition of tax "[a] charge imposed for the reasonable regulatory costs to a local government for issuing licenses and permits, performing investigations, inspections, and audits, enforcing agricultural marketing orders, and the administrative enforcement and adjudication thereof"].) Here, as in *Jacks*, we have no occasion to address the extent of the difference.

The City does not dispute that the pumping charge is imposed for a government "privilege" or "benefit," or, alternatively, for a "government service or product" (which is subject to the same set of requirements as a fee for a government "privilege" or "benefit" under subdivision (e)(1)) (Cal. Const., art. XIII C, § 1, subd. (e)(2)). But the City contends that the pumping charge cannot satisfy the remaining requirements for an exempt charge because the City does not benefit from the District's activities to the same extent as other pumpers, and because Water Code section 75594's three-to-one ratio requires the City and other nonagricultural users to shoulder a disproportionate share of the fiscal burden of supporting the District's activities. The City argues that the charges therefore violate both the requirement that the amount of a nontax charge be "no more than necessary to cover the reasonable costs of the governmental activity," and the requirement that "the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Cal. Const., art. XIII C, § 1, subd. (e).)

Although the Court of Appeal declared both requirements satisfied, its analysis addressed only the first. The Court of Appeal mentioned the "fair or reasonable relationship" requirement only in passing, noting that, "by imposing fees based upon the volume of water extracted, the District largely *does* charge individual pumpers in proportion to the benefit they receive from the District's conservation activities." But, the court concluded, "[t]hat is more than is required." What article XIII C does require, the court reasoned, is simply that the District's pumping charges, in the aggregate, do not exceed the reasonable cost of regulating the District's groundwater supply. In support of this conclusion, the Court of Appeal cited our decision in *California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 438 (*Farm Bureau*), in which we said that for purposes of the *Sinclair Paint* analysis, "[a] regulatory fee does

22

not become a tax simply because the fee may be disproportionate to the service rendered to individual payors. [Citation.] The question of proportionality is not measured on an individual basis. Rather, it is measured collectively, considering all rate payors." *Farm Bureau* went on to say that, under this standard, "permissible fees must be related to the overall cost of the governmental regulation. They need not be finely calibrated to the precise benefit each individual fee payor might derive. What a fee cannot do is exceed the reasonable cost of regulation with the generated surplus used for general revenue collection." (*Ibid.*)[8] So too here, the Court of Appeal held, "[t]he District need only ensure that its charges in the aggregate do not exceed its regulatory costs."

The City does not challenge the Court of Appeal's reliance on *Farm Bureau* in conducting the "reasonable cost" inquiry under article XIII C. It contends, however, that the court's aggregate cost analysis does not answer the separate question whether "the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Cal. Const., art. XIII C, § 1, subd. (e).) We agree.

*Sinclair Paint*, from which the relevant article XIII C requirements are derived, made clear that the aggregate cost inquiry and the allocation inquiry are two separate steps in the analysis. (*Sinclair Paint*, *supra*, 15 Cal.4th at p. 878.) *Sinclair Paint* adopted this analytical framework from the Court of Appeal's opinion in *SDG&E*, *supra*, 203 Cal.App.3d 1132 which concerned permitting fees assessed under legislation that authorized "local air pollution control districts to apportion the costs of their permit programs among all monitored polluters

---

**8** Although Proposition 26 had been passed by the time we issued our decision in *Farm Bureau*, we had no occasion to address it. (See *Farm Bureau*, *supra*, 51 Cal.4th at p. 428, fn. 2.)

according to a formula based on the amount of emissions they discharged." (*Sinclair Paint*, *supra*, 15 Cal.4th at p. 878, citing *SDG&E*, *supra*, 203 Cal.App.3d at p. 1135.)  The Court of Appeal in that case had concluded the fees were not special taxes for purposes of article XIII A, *both* because "the amount of the regulatory fees was limited to the reasonable costs of each district's program," *and* because "the allocation of costs based on emissions 'fairly relates to the permit holder's burden on the district's programs.' "  (*Sinclair Paint*, at p. 878, quoting *SDG&E*, *supra*, 203 Cal.App.3d at p. 1146.)  Applying the same framework in *Sinclair Paint*, we explained that Sinclair, a manufacturer challenging the fees at issue in the case, would have the opportunity to "prove at trial that the amount of fees assessed and paid exceeded the reasonable cost of providing the protective services for which the fees were charged, or that the fees were levied for unrelated revenue purposes.  [Citation.]  *Additionally*, Sinclair will have the opportunity to try to show that no clear nexus exists between its products and childhood lead poisoning, or that the amount of the fees bore no reasonable relationship to the social or economic 'burdens' its operations generated.  [Citations.]"  (*Sinclair Paint*, at p. 881, italics added; see also *id.* at p. 876.)

Our decision in *Farm Bureau*, on which the Court of Appeal in this case relied, did not alter this framework.  (*Farm Bureau*, *supra*, 51 Cal.4th at pp. 436–437, 441.)  In *Farm Bureau*, we considered and rejected a facial challenge to a statutory user fee on certain water rights holders for purposes of supporting the State Water Resources Control Board's Water Rights Division.  We explained that the statutory scheme did not authorize fees for general revenue purposes, but for purposes of funding activities performed by the Water Rights Division.  (*Id.* at pp. 439–440.)  It was in the course of this discussion that we observed that "[t]he question of proportionality is not measured on an individual basis," but is instead "measured collectively."  (*Id.* at p. 438.)  In a separate section of the opinion, we

24

addressed the plaintiffs' argument that the statute was unconstitutional as applied because the fee schedule established by regulation meant that, as a practical matter, 40 percent of water rights holders would be responsible for funding 100 percent of governmental activities that benefit all water rights holders and the general public. The plaintiffs argued that, for this reason, the fees were "disproportionate to the benefit derived by the fee payors or the burden they place on the regulatory system." (*Id.* at p. 440.) We remanded for further consideration of that question, instructing the trial court on remand to "determine whether the statutory scheme and its implementing regulations provide a fair, reasonable, and substantially proportionate assessment of all costs related to the regulation of affected payors." (*Id.* at p. 442.) This is, in essence, the same question that the Court of Appeal in this case missed.

To be sure, pre-Proposition 26 case law made clear that, "[i]n pursuing a constitutionally and statutorily mandated conservation program, cost allocations for services provided are to be judged by a standard of reasonableness with some flexibility permitted to account for system-wide complexity." (*Brydon v. East Bay Mun. Utility Dist.* (1994) 24 Cal.App.4th 178, 193.) Article XIII A, the cases held, "does not apply to every regulatory fee simply because, as applied to one or another of the payor class, the fee is disproportionate to the service rendered." (*Id.* at p. 194.) Courts thus held that an agency could, for example, charge a flat filing fee to defray the costs of agency environmental review, even though review of some documents undoubtedly required a greater expenditure of agency resources than others. (*California Assn. of Prof. Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935, 953.) But the case law did not suggest that the constitutionality of a fee for a government service, for example, depended solely on whether the fees collected, in the aggregate, exceeded the aggregate amount necessary to provide the service to affected payors. (See *id.* at p. 950

25

[distinguishing regulatory fees from "other types of user fees" that are "easily correlated to a specific, ascertainable cost"].)  Nor did the cases suggest that the constitutional framework was otherwise indifferent to allegations that a government agency lacked any reasonable basis for charging a higher fee to some payors than others.  (See *id.* at p. 955 [upholding higher fees for filing certain environmental review documents as having "sufficient reasonable basis"].)

In any event, regardless of the backdrop against which Proposition 26 was passed, it is clear from the text itself that voters intended to adopt two separate requirements:  To qualify as a nontax "fee" under article XIII C, as amended, a charge must satisfy *both* the requirement that it be fixed in an amount that is "no more than necessary to cover the reasonable costs of the governmental activity," *and* the requirement that "the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."  (Cal. Const., art. XIII C, § 1, subd. (e).)  We must presume the Legislature intended each requirement to have independent effect.  (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459.)

As noted, the Court of Appeal did mention the reasonable-relationship requirement, if only to observe that the District's volume-based charges mean that the District "largely *does* charge individual pumpers in proportion to the benefit they receive from the District's conservation activities."  But this observation misses the entire basis of the City's argument:  namely, that the City does not receive the same benefit from the District's conservation activities as other pumpers, and that it is required to bear a disproportionate share of the fiscal burden by virtue of Water Code section 75594's three-to-one ratio.  We thus remand the case to the Court of Appeal with instructions to consider whether the record sufficiently establishes that the District's rates for the 2011–2012 and the 2012–2013 water years bore a reasonable relationship to the benefits of its

26

conservation activities, as article XIII C requires. In making this determination, the Court of Appeal may consider whether, as the District argues, it should be afforded the opportunity to supplement the administrative record with evidence bearing on this question.[9]

## IV.

The judgment of the Court of Appeal is affirmed in part and reversed in part, and the case remanded for further proceedings consistent with this opinion.

KRUGER, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
CHIN, J.
CORRIGAN, J.
CUÉLLAR, J.
IRION, J.[*]

---

[9] The question whether the District's rates for the 2011–2012 and the 2012–2013 water years be justified under article XIII C is a separate question from whether the three-to-one ratio in Water Code section 75594 is facially unconstitutional under article XIII C, as the City contends. Because the specific question before us concerns the justification for the challenged rates that were imposed without voter approval, we do not reach the latter issue; the parties and interested amici are free to argue the point on remand.

[*] Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY LIU, J.**

I join today's opinion. But I would provide an explicit answer to a question addressed only implicitly by the court. One of the issues on which we granted review was whether Water Code section 75594's requirement for at least a three-to-one ratio of fees on nonagricultural use of groundwater to such fees on agricultural use survives the adoption of articles XIII C and XIII D. The answer, which is apparent from today's opinion, is that the requirement does not survive. There may be circumstances in which the three-to-one ratio is justified, but the justification will not have anything to do with Water Code section 75594. Instead, the justification will be that the fees imposed on ratepayers bear "a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Cal. Const., art. XIII C, § 1, subd. (e); maj. opn., *ante*, at p. 26.)

LIU, J.

1

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** City of San Buenaventura v. United Water Conservation District
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 235 Cal.App.4th 228
**Rehearing Granted**

_____

**Opinion No.** S226036
**Date Filed:** December 4, 2017
_____

**Court:** Superior
**County:** Santa Barbara
**Judge:** Thomas Pearce Anderle

_____

**Counsel:**

Ariel Pierre Calonne and Gregory G. Diaz, City Attorneys, Keith Bauerle, Assistant City Attorney; Colantuono & Levin, Colantuono, Highsmith & Whatley, Michael G. Colantuono, David J. Ruderman, Megan S. Knize and Michael R. Cobden for Plaintiff, Cross-defendant and Appellant.

Buchalter Nemer, Douglas E. Wance, Robert M. Dato and Michael L Meeks for Tesoro Refining and Marketing Company as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Jonathan M. Coupal, Trevor A. Grimm, Timothy A. Bittle and J. Ryan Cogdill for Howard Jarvis Taxpayers Foundation as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Jack Cohen as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Aleshire & Wynder, June S. Ailin, Lindsay M. Tabaian and Miles P. Hogan for City of Signal Hill as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Timothy S. Guster; Silicon Valley Law Group, Jeffrey S. Lawson; Johnson & James, Robert K. Johnson and Omar F. James for Great Oaks Water Company as Amicus Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Musick, Peeler & Garrett, Anthony H. Trembley, Jane Ellison Usher, Gregory J. Patterson, Cheryl A. Orr and William H. Hair for Defendants, Cross-complainants and Appellants.

Law Offices of Young Wooldridge, Ernest A. Conant and Jeffrey J. Patrick for Santa Ynez River Water Conservation District as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

Nancy N. McDonough and Christian C. Scheuring for California Farm Bureau Federation and Farm Bureau of Ventura County as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

Marcia Scully and Heather C. Beatty for The Metorpolitan Water District of Southern California as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

**Counsel:**

Stanly T. Yamamoto; Hanson Bridgett, Adam Hofmann; Greines, Martin, Stein & Richland, Timothy T. Coates and Alan Diamond for Santa Clara Valley Water District as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner; Latham & Watkins, Paul N. Singarella and Kathryn M. Wagner for Water Replenishment District of Southern California as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants.

Theresa A. Goldner, County Counsel (Kern), Charles F. Collins, Chief Deputy County Counsel; Rossmann and Moore, Antonio Rossmann and Roger B. Moore for County of Kern as Amicus Curiae.

Keker & Van Nest, John W. Keker, Daniel Purcell, Dan Jackson and Warren A. Braunig for San Diego County Water Authority as Amicus Curiae.

Aleshire & Wynder and Patricia J. Quilizapa for City of Cerritos, City of Downey and City of Signal Hill as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael G. Colantuono
Colantuono, Highsmith & Whatley
790 E. Colorado Avenue, Suite 850
Pasadena, CA  91101-2109
(213) 542-5700

Jane Ellison Usher
Musick, Peeler & Garrett
2801 Townsgate Road, Suite 200
Westlake Village, CA  91361
(805) 418-3100

Cheryl A. Orr
Musick, Peeler & Garrett
2801 Townsgate Road, Suite 200
Westlake Village, CA  91361
(805) 418-3100