Filed 10/2/19
See Dissenting Opinion

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| TESORO LOGISTIC OPERATIONS, LLC,<br>　　　Plaintiff and Appellant,<br>v.<br>CITY OF RIALTO,<br>　　　Defendant and Respondent. | E069070<br><br>(Super.Ct.No. CIVDS1603163)<br><br>OPINION |
| PHILLIPS 66 COMPANY,<br>　　　Plaintiff and Appellant,<br>v.<br>CITY OF RIALTO,<br>　　　Defendant and Respondent. | E069074<br><br>(Super.Ct.No. CIVDS1516839) |
| EQUILON ENTERPRISES LLC,<br>　　　Plaintiff and Appellant,<br>v.<br>CITY OF RIALTO,<br>　　　Defendant and Respondent. | E069100<br><br>(Super.Ct.No. CIVDS1602980) |
| SFPP, L.P.,<br>　　　Plaintiff and Appellant,<br>v.<br>CITY OF RIALTO,<br>　　　Defendant and Respondent. | E069108<br><br>(Super.Ct.No. CIVDS1603260) |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Reversed with directions.

1

Nielsen Merksamer Parrinello Gross & Leoni, Christopher E. Skinnell, Kurt R. Oneto, and Eric J. Miethke for Plaintiffs and Appellants Tesoro Logistic Operations, LLC and Phillips 66 Company.

Dakessian Law, Ltd., Mardiros H. Dakessian, Zareh Jaltorossian, and Ruben Sislyan for Plaintiff and Appellant Equilon Enterprises, LLC.

Reed Smith, Paul D. Fogel, John Lynn Smith, Peter B. Kanter, and Phillip H. Babich for Plaintiff and Appellant SFPP, L.P.

Dorothy Rothrock for California Manufacturers & Technology Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Pillsbury Winthrop Shaw Pittman and Kevin M. Fong for Western States Petroleum Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Heather Wallace for California Chamber of Commerce as Amicus Curiae on behalf of Plaintiffs and Appellants.

Levatolaw and Ronald C. Cohen for California Business Roundtable as Amicus Curiae on behalf of Plaintiffs and Appellants.

Aleshire & Wynder and June S. Ailin for Defendant and Respondent.

Colantuono, Highsmith & Whatley and Holly O. Whatley for League of California Cities as Amicus Curiae on behalf of Defendant and Respondent.

## I. INTRODUCTION

In the November 2014 election, a majority of defendant and respondent, City of Rialto's (the City), voters approved Measure U, a ballot measure which was adopted by

2

the City and which imposed an "annual business license tax" of "up to One Dollar [($1.00)] per year for each One (1) cubic foot of liquid storage capacity" on "[a]ny person engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility" in the City.

The four plaintiffs and appellants in these actions, Tesoro Logistic Operations, LLC (Tesoro), Equilon Enterprises, LLC (Equilon), SFPP, L.P. (SFPP), and Phillips 66 Company (P66), own all of the wholesale liquid fuel storage facilities, also known as tank farms or terminals, in the City. Plaintiffs are engaged in the business of "refining and marketing fuel nationwide." Gasoline and other fuels are transported from refineries to plaintiffs' facilities in the City, where the fuels are placed in large storage tanks and mixed with additives before they are are transported to gasoline stations or other purchasers for retail sale.

Beginning in 2015, the City assessed Measure U taxes on plaintiffs based on the liquid fuel *storage capacity* of plaintiffs' wholesale liquid fuel storage facilities, or storage tanks, in the City. Plaintiffs paid the taxes under protest and filed these actions challenging Measure U's validity on statutory and constitutional grounds. Plaintiffs moved for judgments on the pleadings, and for summary judgment or summary adjudication, then the City filed its own motions for judgments on the pleadings. Following a hearing, the trial court concluded there were no disputed issues of fact, that all of the motions presented the same questions of law, and that the Measure U tax is a

3

valid business license tax.  The court thus denied plaintiffs' motions, granted the City's motions, and entered judgments in favor of the City.

In these appeals, plaintiffs renew their legal challenges to Measure U.  They claim that the "Guidelines" the City adopted in May 2016, purportedly to "implement" Measure U, are invalid because they effectively amended Measure U.  (Elec. Code, § 9217.)  We agree that the Guidelines amended Measure U and must therefore be considered invalid.

The Guidelines aside, plaintiffs claim the Measure U tax is an invalid "disguised" property tax because, by taxing their facilities' liquid fuel storage capacity, it taxes real property ownership and violates state constitutional restrictions on real property taxation. (Cal. Const., art. XIII-XIII D.)  Plaintiffs also claim the Measure U tax is invalid as what it purports to be—a business license tax—because it is not based on the proportion of business activity, or the amount of liquid fuel processing, that plaintiffs conduct in the City in relation to the amount of such business activity that plaintiffs conduct in other jurisdictions.  (Gov. Code, § 37101, subd. (b); U.S. Const., art. I, § 8, cl. 3.)

We conclude the Measure U tax is an invalid real property tax.  Thus, we reverse the judgments in favor of the City, and we remand the matter to the trial court with directions to grant plaintiffs' motions for judgments on the pleadings and to enter judgments in favor of plaintiffs on plaintiffs' complaints.

4

## II. FACTS AND PROCEDURAL BACKGROUND

A. *Measure U's Approval and Enactment*

In June 2014, the City council adopted a resolution calling for a ballot measure, later known as Measure U, to be placed on the ballot for the November 2014 election. A majority, 51.24 percent, of the City's voters approved Measure U. In December 2014, the City council adopted Ordinance No. 1556, which added Measure U to the Rialto Municipal Code (RMC) as section 5.04.028, titled "Wholesale Liquid Fuel Storage Facilities." Ordinance No. 1556 states that the purpose of the Measure U tax is "to raise revenue for general fund expenditures" and calls for the City council to "establish the amount of the tax annually by resolution each fiscal year."[1]

As approved by the City's voters and as enacted as section 5.04.028 of the RMC, Measure U provides: "Any person engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility shall pay an annual business license tax of up to One Dollar ($1.00) per year for each One (1) cubic foot of liquid fuel storage capacity." (RMC, § 5.04.028.A.) "Fuel" is broadly defined to include "all combustible gases and liquids suitable for the generation of power" and "all

---

[1] An analysis captioned "City Attorney Impartial Analysis of Measure U Rialto 2014 Tank Farm Storage Measure" was presented to the City's voters as part of the City's ballot pamphlet for the November 2014 election. The analysis stated that the Measure U tax was "a business license tax" and that its proceeds would be deposited into the City's general fund and used for "any municipal purpose." The analysis noted that, "[w]hen and if fully implemented, the business license tax on tank farms generated by Measure U is anticipated to increase tax revenues to as much as approximately $10 million, based on the capacity of tank farms in the [C]ity . . . ."

types of gasoline, gasoline blendstocks, [and] diesel." (RMC, § 5.04.028.B.) In January 2015, the City council, by resolution, set the tax at $1 for each one cubic foot of liquid fuel storage capacity, the maximum amount of tax allowable under Measure U, for an indefinite period.

B. *The 2015-2016 Tax Assessments and Plaintiffs' Lawsuits Challenging Measure U*

In March and April 2015, the City sent letters to each plaintiff, informing them that they had been identified as liquid fuel storage facilities subject to the Measure U tax, and asking them to complete a supplemental business license application confirming the storage capacities of the liquid fuel storage tanks they owned or operated in the City. In response, each plaintiff confirmed the number and capacity of the storage tanks they owned or operated in the City. Based on this information, the City assessed each plaintiff a Measure U tax for the 2015 calendar year. Plaintiffs paid the 2015 tax assessments under protest and filed administrative appeals and refund claims.

Plaintiffs then filed these actions, challenging the validity of the Measure U tax on statutory and constitutional grounds. In 2016, the City assessed each plaintiff another Measure U tax for the 2016 calendar year. Plaintiffs paid the 2016 taxes under protest and filed supplemental or amended complaints challenging the 2016 tax assessments along with the 2015 tax assessments. The parties then stipulated that plaintiffs had exhausted their administrative remedies concerning their 2015 and 2016 refund claims; that plaintiffs' administrative appeals and refund claims for their 2015 and 2016 taxes were deemed denied; and that plaintiffs were not required to file appeals and refund

6

claims for future Measure U tax assessments to the extent such claims and appeals concerned the issues raised in this litigation.

C. *The Measure U Guidelines*

Measure U authorized the City council, by resolution, to "adopt administrative regulations or policies to implement" Measure U. (RMC, § 5.04.028.E.) In May 2016, after plaintiffs filed these actions challenging Measure U's validity, the City council adopted Resolution No. 6951 titled "Policies and Guidelines Related to the Implementation of Measure U" (the Guidelines).

The Guidelines provide that the Measure U tax does not apply to a wholesale liquid fuel storage facility in which no amount of liquid fuel is stored during a calendar year. The Guidelines state: "It is the intent of the City that the business license tax be levied only in circumstances where an operator of a wholesale liquid fuel storage facility (a 'Facility') is actually engaged in the business of operating the Facility." To that end, the Guidelines direct the City to provide, on a supplemental application for a business license, "an option for the operator of a Facility to certify, under penalty of perjury, that it is not engaged in the business of operating the Facility for the applicable calendar year." The Guidelines also require the operator of a facility to submit a "Sworn Statement" "certifying that it is not engaged in the business of operating the Facility for the applicable calendar year." An operator is deemed "'not engaged in the business of operating the Facility' . . . if no liquid fuel shall be stored in the Facility at any given time

7

in the applicable calendar year." If a facility has multiple operators, the operators may allocate the $1 per cubic foot tax "amongst themselves."

D. *The Motions for Summary Judgment and Judgment on the Pleadings*

In August 2016, each plaintiff filed a motion for summary judgment or summary adjudication and a motion for judgment on the pleadings. In September 2016, the City filed its own motions for judgment on the pleadings in each action.

In their motions, plaintiffs claimed the tax was an unlawful business license tax because it was based on property ownership, rather than on business activity, and that the tax was also an unlawful property tax or use tax. Plaintiffs also claimed that the Guidelines violated Elections Code section 9217 because they amended rather than clarified the terms of Measure U as approved by the voters. In its motions, the City claimed plaintiffs' complaints did not state a cause of action because the tax was a valid business license tax, not an unlawful property tax or use tax.

In February 2017, following a hearing, the court issued a ruling on all of the parties' motions, concluding that the Measure U tax was a valid business license tax and was not a "disguised" invalid property tax. The court ruled that the Guidelines did not violate Elections Code section 9217 because they clarified rather than modified "the substance" of Measure U. The court thus denied plaintiffs' motions for judgment on the pleadings and for summary judgment or adjudication.

Despite the court's ruling that Measure U was a valid business license tax, the court initially denied the City's motions for judgment on the pleadings because "factual

8

issues remain[ed]" concerning whether the City's 2015 and 2016 tax assessments against plaintiffs were based on the storage capacity of *empty* storage tanks, and thus whether plaintiffs were entitled to partial refunds of their 2015 and 2016 taxes. It was later stipulated that Equilon and Tesoro, but not SFPP or P66, were entitled to partial refunds on this basis. The court then entered judgments on the pleadings in favor of the City on the ground the Measure U tax was "a legal and valid business license tax." Plaintiffs appealed, and their appeals have been consolidated.

## III. DISCUSSION

A. *Standard of Review*

A plaintiff is entitled to judgment on the pleadings if its complaint states a cause of action against the defendant and the defendant's answer does not state facts sufficient to constitute a defense. (Code Civ. Proc., § 438, subd. (c)(1)(A), (3)(A).) Conversely, a defendant is entitled to judgment on the pleadings if the complaint does not state a cause of action against the defendant. (*Id*., subd. (c)(1)(B), (3)(B).) On appeal from a judgment on the pleadings, our review is de novo. (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 685.) Here, the pleadings present questions of law concerning the validity of the Measure U tax, and we review these questions de novo. (*Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 953 [the application of a

9

tax statute to undisputed facts, and whether a tax is a particular type of tax, are questions of law subject to de novo review].)**2**

B. *The Guidelines Are Invalid Because They Unlawfully Amended Measure U*

Plaintiffs claim the Guidelines are invalid because they amended Measure U's provisions and, as such, violate Elections Code section 9217. We agree.

Elections Code section 9217 prohibits a city's legislative body from repealing or amending a voter-adopted municipal ordinance, unless the ordinance authorized the city to repeal or amend it. The statute states: "If a majority of the voters voting on a proposed ordinance vote in its favor, the ordinance shall become a valid and binding ordinance of the city. . . . No ordinance that is . . . adopted by the voters, *shall be repealed or amended* except by a vote of the people, unless provision is otherwise made in the original ordinance." (Italics added.)

Measure U expressly authorized the City to "adopt administrative regulations or policies to implement" Measure U. (See RMC, § 5.04.028.E.) But Measure U did not authorize the City to repeal or amend any of Measure U's provisions. (Elec. Code, § 9217.) The question we must determine is whether, as plaintiffs claim, the Guidelines

---

**2** Plaintiffs' motions for summary judgment or summary adjudication are based on the same factual allegations averred in plaintiffs' verified original and supplemental complaints. Given our conclusion that plaintiffs are entitled to judgment on the pleadings (on plaintiffs' original and supplemental complaints), it is unnecessary to address whether the court erroneously denied plaintiffs' motions for summary judgment or summary adjudication.

10

unlawfully amend Measure U's provisions, or whether, as the City claims, the Guidelines permissibly clarify and implement Measure U's provisions.

"An amendment has been defined as '"'any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence . . . .' [Citation.] A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]" . . . [A]n amendment [is] '"'a legislative act designed to change some prior or existing law by adding or taking from it some particular provision.'"'" (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484-1485; *People v. Kelly* (2010) 47 Cal.4th 1008, 1027; *Howard Jarvis Taxpayers Assn. v. Bowen* (2011) 192 Cal.App.4th 110, 123-124.) In determining whether a legislative act has amended an existing statute, we examine and compare the provisions of the legislative act or new law with the existing statute. (*Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 40 (*Mobilepark*); *Franchise Tax Board v. Cory* (1978) 80 Cal.App.3d 772, 777.)

As adopted by the City's voters, Measure U imposes "a business license tax" "of up to One Dollar ($1.00) per year for each One (1) cubic foot of liquid fuel storage capacity," on "[a]ny person engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility." (RMC, § 5.04.028.A.) In its resolution adopting the Guidelines, the City stated it was adopting "policies" and "regulations" to "implement" Measure U. (See RMC, § 5.04.028.E.) Although the City

11

purported to implement Measure U in adopting the Guidelines, the Guidelines, in effect, amended Measure U—the Guidelines changed the scope and effect of Measure U—by limiting (1) the wholesale liquid fuel storage facilities to which the Measure U tax applies, and (2) the persons liable for the Measure U tax.

The Guidelines effected the first of these two amendments by exempting from liability for the Measure U tax the "operator" of any wholesale liquid fuel storage facility in which no amount of liquid fuel is stored during a given calendar year. The Guidelines deem the operator of such a facility to be "'not engaged in the business of operating'" the facility during the calendar year in which no liquid fuel is stored in the facility. (Guidelines, § 1.) Measure U, in contrast, imposes the Measure U tax on *all* wholesale liquid fuel storage facilities, including facilities in which no amount of liquid fuel is stored, during a calendar year. (RMC, § 5.04.028.A.) Thus, the Guidelines amended Measure U by limiting the Measure U tax to wholesale liquid fuel storage facilities in which *some amount* of liquid fuel is stored during a calendar year.

The Guidelines effected the second amendment by limiting liability for the Measure U tax to persons engaged in the business of "operating" a facility in which some amount of liquid fuel is stored during a calendar year. The Guidelines allow the City to enforce the Measure U tax against "all operators" of such a facility, and if the facility has multiple operators, its operators "may allocate" the Measure U tax "amongst themselves." (Guidelines, § 2.) Measure U, however, did not limit the persons liable for the Measure U tax to a facility's "operators." Rather, it imposed the tax on "[a]ny person

12

engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility." (RMC, § 5.04.028.A.) Because the Guidelines amend Measure U by limiting (1) the facilities to which the Measure U tax applies, and (2) the persons liable for the tax—the scope of Measure U's application—the Guidelines must be considered facially invalid under the standards of Elections Code section 9217. (*Mobilepark*, *supra*, 35 Cal.App.4th at pp. 40-43.)

The City claims the Guidelines permissibly clarify and implement Measure U, rather than amend it, because the Guidelines are consistent with the voters' intent to tax "business operations" in adopting Measure U. (*Creighton v. City of Santa Monica* (1984) 160 Cal.App.3d 1011, 1021-1022 [ambiguities in voter-adopted ordinance may be clarified by legislative action in order to implement voters' intent]; cf. *Mobilepark*, *supra*, 35 Cal.App.4th at pp. 42-43 [distinguishing authority permitting legislative clarification of ambiguous voter-adopted initiatives].)

In considering the City's claim that the voters intended the Measure U tax to apply solely to a wholesale liquid fuel storage facility's "business operations," we apply settled rules of statutory interpretation. "In interpreting statutory language adopted by voter initiative [or referendum], our primary task is to determine the intent of the electorate so that we may adopt the construction that best effectuates the purpose of the law. [Citations.] We begin with the statutory language because it is generally the most reliable indicator of [the voters'] intent. [Citation.] If there is no ambiguity in the language of a statute, we construe the words according to their ordinary meaning without

13

reference to other indicia of the voters' intent. [Citation.] . . . [¶] When statutory language is susceptible of more than one reasonable interpretation, we refer to other indicia of the voters' intent, particularly the analysis and arguments contained in the official ballot pamphlet." (*Outfitter Properties, LLC v. Wildlife Conservation Bd.* (2012) 207 Cal.App.4th 237, 244.)

By its terms, Measure U imposes a "business license tax" on "[a]ny person engaged in the business of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility." (RMC, § 5.04.028.A.) If read in isolation from the rest of Measure U's provisions, Measure U's uses of the phrases "business license tax" and "engaged in the business" arguably support the City's claim that the voters intended the Measure U tax to apply to a facility's "business operations." But, "'[s]tatutory language should not be interpreted in isolation[;] [it] must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts.'" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903.)

Measure U's provisions as a whole clearly show that the voters intended Measure U to apply to a facility's "storage capacity" rather than its "business operations." (RMC, § 5.04.028.A.) Although the Measure U tax is payable by "[a]ny person *engaged in the business* of owning[,] operating, leasing, supplying[,] or providing a wholesale liquid fuel storage facility" (italics added), a facility's "storage capacity," not its "business operations," is the basis or incidence of the Measure U tax. Measure U uses the phrase "engaged in the business of" to describe the persons liable for the tax, not to describe the

14

basis or incidence of the tax. The term "business operations" does not appear in Measure U, and Measure U does not suggest that a facility's business operations should be the basis of the tax. In their entirety, Measure U's provisions show that, in adopting Measure U, the voters understood and intended that the Measure U tax would apply to a facility's "storage capacity" rather than its business operations.

Additionally, even if Measure U's provisions are ambiguous on the question of whether the voters intended the Measure U tax to apply to a facility's business operations rather than its storage capacity, the City's "Impartial Analysis of Measure U Rialto Tank Farm Storage Measure" (the analysis), shows that the voters understood and intended that the Measure U tax would apply to a facility's storage capacity. The City's analysis, which was included in the ballot pamphlet for Measure U, states: "*The rate of the tax is based on the storage capacity of the affected businesses, and not on the actual amount of liquid being stored*." (Italics added.) Consistent with Measure U's provisions, the City's analysis plainly told the voters that, if adopted, the Measure U tax would not be based on a facility's business operations or "on the actual amount of liquid fuel being stored" in the facility," but on the facility's storage capacity.[3]

The City's conduct following Measure U's adoption further illustrates that the Guidelines amended rather than clarified Measure U's provisions. Before the City

---

[3] The title of the City's analysis is also consistent with our interpretation of the voters' intent to tax a facility's storage tanks, in that the title includes the phrase, "Rialto 2014 Tank Farm Storage Measure," not "Rialto 2014 Tank Farm *Business Operations* Measure."

adopted the Guidelines in May 2016, the City based plaintiffs' 2015 and 2016 Measure U tax assessments on the storage capacity of plaintiffs' facilities, without regard to whether any liquid fuel was stored in the facilities during 2015 and 2016. That is, the City assessed the Measure U tax without regard to any business activity associated with the facilities or the tanks. Then, after plaintiffs filed these actions challenging Measure U's validity as a business license tax or property tax, the City adopted the Guidelines, changing Measure U's scope and effect. The City's conduct in implementing Measure U in 2015 and 2016 supports our conclusion that the Guidelines amended rather than clarified Measure U and, in doing so, violated Elections Code section 9217.

C. *The Measure U Tax is an Invalid Real Property Tax*

Plaintiffs claim the Measure U tax is an invalid "disguised" real property tax, rather than a valid business license tax or excise tax. We agree. We first explain why the Measure U tax is a real property tax, rather than a business license tax or excise tax. We then explain why, as a real property tax, the Measure U tax is invalid.

1. The Measure U Tax Is a Tax on Real Property

A tax on property ownership per se is one of the key indicators or hallmarks of a property tax. "At the most general level, a property tax is a tax whose imposition is triggered merely by the ownership of property." (*Thomas v. City of East Palo Alto* (1997) 53 Cal.App.4th 1084, 1088 (*Thomas*); *City of Oakland v. Digre* (1988) 205 Cal.App.3d 99, 106 [a property tax taxes ownership per se without conditions, regardless of whether or how the property is used].) As fixtures or improvements to real property,

16

plaintiffs' storage tanks *are* real property.  (See Rev. & Tax. Code, §§ 104, subd. (c), 105, subd. (a).)  And, because Measure U taxes the bare storage capacity of a facility's storage tanks regardless of whether the tanks are used in any business, or whether any fuel is stored in the tanks, the Measure U tax is a tax on real property.

Indeed, the mere act of owning or being "engaged in the business of owning" a wholesale liquid fuel storage facility triggers liability for the Measure U tax.  (RMC, § 5.04.028.A.)  And, under Measure U, there is no discernable difference between simply owning a wholesale liquid fuel storage tank facility and being engaged in the business of owning such a facility.  An owner of such a facility cannot avoid liability for the Measure U tax by disengaging from any business activity related to the storage tanks or the facility, including the business activity of leasing the storage tanks or the facility to an operator of the facility.  Rather, an owner of such a facility is liable for the Measure U tax even if the owner does not lease the facility or the storage tanks and has nothing to do with the business operations of the facility or the use of the storage tanks.  An owner of such facility is subject to the Measure U tax each calendar year, even if the facility is closed and conducts no business operations during the year.

The City claims the Measure U tax is not a real property tax but an excise tax, or a tax on "the exercise of one of the incidents of property ownership, such as the ability to transfer or devise property, or the ability to use, store or consume" property.  (*Thomas*, *supra*, 53 Cal.App.4th at p. 1088 [a valid excise tax is a tax on "any of the incidents of ownership, such as sale, transfer, rental, special use of certain city services, and so on."].)

17

"The determination of whether a particular tax is a property or excise tax is not always an easy matter" (*Douglas Aircraft Co. v. Johnson* (1939) 13 Cal.2d 545, 550), because the exercise of mere ownership rights in property may be difficult to distinguish from the use of property (*Thomas*, *supra*, 53 Cal.App.4th at p. 1093).[4]  But in this case, the distinction between the ownership of a wholesale liquid fuel storage tank facility and the use of the facility or the storage tanks in the facility is readily apparent.  The Measure U tax is not an excise tax because it is not a tax on the privilege of using the facilities, storing fuel in the storage tanks, any other use of the facilities or the tanks, or any other incident of owning the facility or the tanks.  Rather, Measure U taxes the owners of the facilities based solely on the storage capacity of the tanks in the facilities, regardless of whether the owners lease the facilities or the tanks, whether the facilities or the tanks are used in any way, or whether any fuel is stored in the tanks.  (RMC, § 5.04.028.A.)[5]

---

[4]  The City equates an excise tax, or a tax on the privilege of using property, with a business license tax, or a tax on the privilege of engaging in a business, or business operations. We agree that the analogy is appropriate.

[5]  The City asks that we take judicial notice of chapter 5.70 of the RMC, which provides for business license fees on businesses engaged in renting or leasing commercial property in the City, including "hotel, motel, rooming, lodging . . . facilities."  We grant the City's request, but it does not aid the City's argument that the Measure U tax is an excise tax or business license tax.  The City claims the Measure U tax is similar to these business license taxes in that "[o]wning or leasing property can be a business and can be subject to a business license tax."  But the City's business license taxes on hotels and similar lodging facilities are ostensibly based on the privilege of allowing persons to *use* the facilities, which is an incident of owning the facilities.  Unlike the Measure U tax, these taxes are not based on the mere ownership of the facilities.  This factor distinguishes these business license taxes from the Measure U tax.  Thus, we also deny plaintiffs' related requests that we take judicial notice of the City's "Schedule of Fees: Business Licensing (Updated 6/28/17)," and Resolution No. 5280, adopted by the City

The City further argues that the Measure U tax is an excise tax because plaintiffs' businesses "depend on tanks in which liquid fuel can be stored," and taxing this "storage function" or use of the storage tanks is "legal and proper." (*Douglas Aircraft Co. v. Johnson*, *supra*, 13 Cal.2d at p. 551 [a tax on the use of property is not a property tax].) But the City does not explain how Measure U taxes this "storage function," the privilege of storing fuel in the tanks, or the use of the tanks to store fuel.[6] As discussed, Measure U taxes the bare storage capacity of liquid fuel storage tanks, regardless of whether the tanks are used or whether any fuel is stored in them.

The City also points out that, in enacting Measure U, the voters "expressly stated their intent to adopt a business license tax." The City claims this "'statutory statement is to be accepted as true unless incompatible with the meaning and effect of the act as a whole.'" (*Douglas Aircraft Co. v. Johnson*, *supra*, 13 Cal.2d at p. 551.) But Measure U's use of the term "business license tax" is, in effect, incompatible with the meaning and effect of Measure U as a whole.

_____

*[footnote continued from previous page]*
*[footnote continued from previous page]*
council in 2005 and establishing a business license tax schedule based on the gross receipts of various businesses, as unnecessary to our consideration of the issues in this appeal. (*Mangini v. R.J. Reynolds Tobacco Co*. (1994) 7 Cal.4th 1057, 1063.) The Measure U tax is not a tax on gross receipts, and the City does not claim that it is.

[6] The Guidelines amended Measure U in an ostensible effort to limit the Measure U tax to storage tanks which are used by providing that the Measure U tax applies only to the operators of wholesale liquid fuel storage facilities in which some amount of liquid fuel is stored during the calendar year. (Guidelines, § 1.) But the Guidelines are invalid precisely because they amended Measure U (Elec. Code, § 9217; *Mobilepark*, *supra*, 35 Cal.App.4th at pp. 40-43), and they cannot be considered in construing Measure U.

19

As the City acknowledges, the language that a tax enactment uses to describe a tax is of "minor importance" in determining the true nature or character of the tax, "for the courts must look beyond the mere title of the bare legislative assertion of the tax's designation" and determine the character of the tax based on the "real object, purpose, and result of the enactment." (*Sacramento Mun. Utility Dist. v. County of Sonoma* (1991) 235 Cal.App.3d 726, 733; *Flynn v. San Francisco* (1941) 18 Cal.2d 210, 214 ["The character of a tax must be determined by its incidents, and from the natural and legal effect of the language employed in the act."].) Notwithstanding Measure U's use of the phrase "business license tax" to describe the Measure U tax, the Measure U tax is, in purpose and effect, a tax on real property. It is not a business license tax or an excise tax because it taxes the storage capacity of storage tanks regardless of whether the tanks are used in any business, and mere ownership of the tanks triggers liability for the tax.

The courts in *Thomas* and *Digre* addressed the distinctions between excise taxes and real property taxes, or taxes on the use of property as compared to taxes on mere property ownership. These courts invalidated city parcel taxes that were not ad valorum, that is, that were not apportioned based on the parcels' value, as article XIII, section 1, of the California Constitution requires. (*Thomas*, *supra*, 53 Cal.App.4th at p. 1086.) In concluding that the parcel taxes were real property taxes, the courts rejected the cities' arguments that the parcel taxes were excise taxes because some parcels would use city services. (*Id*. at p. 1089 ["The tax in question here is a property tax . . . and cannot reasonably be construed as an excise tax on city services . . . . The [c]ity parcel tax is

20

imposed upon every owner of real property in the [c]ity, without regard to the use of the property or the use of any city services."]; *City of Oakland v. Digre*, *supra*, 205 Cal.App.3d at p. 109 ["An excise tax . . . generally is levied against an activity which can be foregone without loss of ownership, and the parcel tax does not bear this characteristic."].)  The courts also rejected the cities' claims that the parcel taxes were excise taxes merely because the text of the tax enactments stated that the taxes were excise taxes.  (*City of Oakland v. Digre*, *supra*, at pp. 105-107; *Thomas*, *supra*, at p. 1089.)  Similarly here, the Measure U tax is a real property tax because it is imposed on the owners of wholesale liquid fuel storage facilities based solely on the storage capacity of the facilities' tanks, regardless of whether the tanks are used or any fuel is stored in them, and the owners cannot avoid the tax by refraining from leasing the facilities or the tanks, or refraining from otherwise using the facilities or the tanks.

An observation of the *Thomas* court is particularly applicable to Measure U's attempt to tax the ownership of wholesale liquid fuel facilities, or storage tanks, under the guise of a business license tax, and without regard to whether the tanks are used:  "If the [c]ity were allowed to impose the tax in question here, a gaping hole would be created in the constitutional provisions which at present protect California property owners from the imposition of local taxes which are not apportioned by value, or which are not approved by a two-thirds vote. . . . We understand and are not unsympathetic to the pressing problems of municipal finance which local jurisdictions face.  Their sources of revenue derived from real property, however, are restricted.  Public entities may not resolve their

21

revenue shortfalls through the subterfuge of enacting taxes on real property which violate those constitutional restrictions by labeling such taxes something they are not. We are required to uphold such constitutional provisions and invalidate such efforts to evade them, regardless of the merit of the goals for which such tax revenue is sought." (*Thomas*, *supra*, 53 Cal.App.4th at pp. 1090-1091.)

    2. <u>Measure U Violates State Constitutional Restrictions on Real Property Taxes</u>

    Plaintiffs claim that, as a real property tax, the Measure U tax is invalid because it violates article XIII D of the California Constitution. We agree.

    Article XIII D was added to the state Constitution in 1996, as part of Proposition 218, the Right to Vote on Taxes Act. (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 835.) It provides that "[n]o tax, assessment, fee, or charge shall be assessed by any agency[7] upon any parcel of property or upon any person as an incident of property ownership" unless the tax comes within one of four exceptions, namely: "(1) The ad valorem property tax imposed pursuant to Article XIII and Article XIII A";[8] "(2) Any special tax receiving a two-thirds vote pursuant to

_____

    **7** An agency includes a local governmental entity, which includes a city. (Cal. Const., art. XIII D, § 2, subd. (a), art. XIII C, § 1, subd. (b).)

    **8** Article XIII A of the California Constitution, also known as Proposition 13, limits ad valorem property taxes to 1 percent of a property's assessed value and limits increases in a property's assessed value to 2 percent per year unless and until the property changes hands. (Cal. Const. art. XIII A, §§ 1, 2; see *Beutz v. County of Riverside* (2010) 184 Cal.App.4th 1516, 1520.) Article XIII A also prohibits counties, cities, and special districts from enacting any "special tax" without a two-thirds vote of the electorate. (Cal. Const., art. XIII A, § 4; *Howard Jarvis Taxpayers Assn. v. City of Riverside*, *supra*, 73 Cal.App.4th at pp. 681-682.)

Section 4 of Article XIII A"; "(3) Assessments as provided by this article"; or "(4) Fees or charges for property related services as provided by this article." (Cal. Const., art. XIII D, § 3.)

The Measure U tax violates article XIII D, section 3, and is therefore invalid, because it imposes a tax on real property and on persons, namely, owners of wholesale liquid fuel storage facilities, as an incident of owning the facilities, and it does not come within any of the exceptions listed in article XIII D. (Cf. *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles*, *supra*, at pp. 835, 840 [annual $12 per unit inspection fee on "residential rental properties" did not violate article XIII D, because it was "more in the nature of a fee for a business license than a charge against property," given that it was "imposed only on those landowners who choose to engage in the residential rental business, and only while they are operating the business."].) The Measure U tax is neither an excise tax nor a business license tax given that it taxes the storage capacity of a facility's wholesale liquid fuel storage tanks (real property), regardless of whether the facilities or the storage tanks are used in any business operations.[9]

## IV. DISPOSITION

The judgments on the pleadings in favor of the City of Rialto are reversed. The matter is remanded to the trial court with directions to grant plaintiffs' motions for

---

[9] In light of our conclusion that the Measure U tax is an invalid real property tax, it is unnecessary to address plaintiffs' arguments that, as a business license tax, the Measure U tax is invalid because it violates the proportionality requirements of Government Code section 37101, subdivision (b), the commerce clause, and related provisions of the California Constitution.

23

judgment on the pleadings and enter judgments in favor of plaintiffs. Plaintiffs shall

recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)

CERTIFIED FOR PUBLICATION


FIELDS
J.


I concur:

McKINSTER
Acting P. J.

24

[*Tesoro Logistic Operations, LLC v. City of Rialto* — E069070]

RAPHAEL, J., Dissenting.

In enacting Measure U in 2014, the City of Rialto's voters imposed a tax on persons "engaged in the business" of owning or operating liquid fuel storage facilities, with the tax measured by tank capacity. Today's opinion strikes down Measure U as a property tax unconstitutional under article XIII D of the California Constitution.

The constitutional question turns on whether the tax is imposed "as an incident of property ownership" under article XIII D of the California Constitution. I cannot join today's opinion because the most applicable article XIII D case from our Supreme Court upheld a tax on business owners in a manner that compels the same result for Measure U.

In that case, the Supreme Court held that a tax on owners of residential rental properties, measured by the number of units, was not imposed "as an incident of property ownership" under article XIII D. The court reasoned that the tax was imposed on only those who choose to engage in the residential rental business, so landowners would not owe the tax if they stopped operating the business but still owned the property.

I cannot see a sound basis for us to sidestep this logic here. That is, I cannot see a rule that would invalidate Measure U (imposed on landowners in a business and based on tank capacity) while not invalidating the tax that the Supreme Court approved (imposed on landowners in a business and based on apartment building capacity). While each tax can be imposed on a property owner, each is imposed on only those engaged in a certain

1

line of business and would not be owed if the landowner no longer is engaged in the business.

Because I conclude that I must apply the Supreme Court's reasoning here, I respectfully dissent from the majority's conclusion that Measure U is invalid under article XIII D. I further do not think that the Guidelines adopted by the City of Rialto's council constitute an impermissible amendment to Measure U under Elections Code section 9217. As I further conclude the other argued grounds for invalidation of Measure U also fail, I would uphold Measure U.

## I.  ARTICLE XIII D

Article XIII D of the California Constitution provides that "[n]o tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership" unless certain requirements have been met. (Cal. Const., art. XIII D, § 3.)  Accordingly, if a levy is not imposed "as an incident of property ownership," then it is not prohibited by article XIII D.

In *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830 (*Apartment Association*), our Supreme Court considered whether an inspection fee imposed on owners of residential rental properties violated article XIII D. The fee, measured at $12 per unit per year, was imposed by the City of Los Angeles on "'[o]wners of all buildings subject to inspection,'" which in turn included "'all residential rental properties with two or more dwelling units on the same lot'" with certain exceptions. (*Apartment Association*, *supra*, at p. 835.)

2

The court upheld the inspection fee as valid. (*Apartment Association*, *supra*, 24 Cal.4th at p. 833.) Focusing on article XIII D's requirement that a tax be imposed "as an incident of property ownership," *Apartment Association* concluded that "[t]he inspection fee is not imposed solely because a person owns property. Rather, it is imposed because the property is being rented. It ceases along with the business operation, whether or not ownership remains in the same hands." (*Apartment Association*, *supra*, at p. 838.) This was so even though the inspection fee, at least per the provisions that the court cited, did not expressly state that it was imposed only on persons engaged in the business of renting residential real property.

The court focused on what it characterized as a "crucial" distinction: the fact that article XIII D restricts levies imposed "as" an incident of property ownership, not "on" an incident of property ownership. (*Apartment Association*, *supra*, 24 Cal.4th at p. 840.) Thus, "taxes, assessments, fees, and charges are subject to the constitutional strictures when they burden landowners *as landowners*. The ordinance does not do so: it imposes a fee on its subjects by virtue of their ownership of a business—i.e., because they are landlords. What plaintiffs ask us to do is to alter the foregoing language—changing 'as an incident of property ownership' to 'on an incident of property ownership.' But to do so would be to ignore its plain meaning—namely, that it applies only to exactions levied solely by virtue of property ownership. We may not interpret article XIII D as if it had been rewritten." (*Id.* at p. 842, fn. omitted.) Under this reasoning, then, a tax that is imposed only on those engaging in a business—even if measured by some aspect of the

property—is not a tax imposed "as" an incident of *property* ownership but as an incident of *business* operation.

Here, Measure U expressly limits its operation to those "engaged" in a certain "business." It provides that "[a]ny person engaged in the business of owning[,] operating, leasing, supplying or providing a wholesale liquid fuel storage facility shall pay an annual business license tax of up to One Dollar ($1.00) per year for each One (1) cubic foot of liquid fuel storage capacity."[1]

Like the inspection fee in *Apartment Association*, Measure U is "imposed only" (*Apartment Association*, *supra*, 24 Cal.4th at p. 840) on those who choose to engage in a certain type of business—here, the business of "owning[,] operating, leasing, supplying or providing a wholesale liquid fuel storage facility." Measure U liability "ceases along with the business operation, whether or not ownership [of wholesale liquid fuel storage facilities] remains in the same hands" (*id.* at p. 838), because if business operations cease, it is no longer "engaged" in that business.

Simply put, there is no meaningful way to distinguish the inspection fee upheld in *Apartment Association* with Measure U. Under *Apartment Association*, Measure U's tax

---

**1** Both plaintiffs and the City add a comma after "owning" when reciting Measure U in their briefs, indicating that the parties agree that "owning" and "operating" are distinct roles in a business that may trigger liability under Measure U. The analysis of Measure U presented to the City's voters in the ballot pamphlet also contained a comma between "owning" and "operating" when reciting Measure U, as do the Guidelines.

4

is not imposed "as an incident of property ownership," and it therefore is not barred under article XIII D.**2**

Plaintiffs offer no way for us to distinguish *Apartment Association* on its terms. Rather, they contend that *Apartment Association* has been "abandoned in more recent California court decisions." Supporting this contention, they cite one Supreme Court case, *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205 (*Bighorn*) and one Court of Appeal case, *Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364 (*Pajaro Valley*), disapproved by *City of San Buenaventura v.*

---

**2** The purpose of the two levies was different, but this does not affect the analysis. In *Apartment Association*, the inspection fee was levied to "'finance the cost of inspection and enforcement'" by the Los Angeles Housing Department. (*Apartment Association*, *supra*, 24 Cal.4th at p. 835.) It was therefore a "regulatory fee." (*Id.* at pp. 838, 843, fn. 6.) Here, Measure U was enacted to "raise revenue for general fund expenditures." (See maj. opn. *ante*, at p. 5.) Although "[g]enerally speaking, the function of a property tax is to raise revenue" (*Ingels v. Riley* (1936) 5 Cal.2d 154, 159), *Apartment Association*'s conclusion that the inspection fee was not imposed "as an incident of property ownership" was not based on the inspection fee's purpose—or, for that matter, any other feature the inspection fee possessed, other than whether ceasing business operations would stop liability.

It likewise does not matter to the analysis that both the inspection fee in *Apartment Association* and the Measure U tax are measured by the capacity of an aspect of the property rather than by its actual business use. In another context, this might be a compelling way to distinguish between taxes on property and taxes on business activity: a city *could not* tax tank capacity (property) but *could* tax the volume of fuel actually stored (business activity). But this distinction is not one available under the language of article XIII D, as construed by *Apartment Association*. Regardless of whether a levy is based on capacity or actual use, the dispositive question under *Apartment Association* is whether the tax would still be imposed if business activity ended. Thus, the fee in *Apartment Association* was upheld even though it was imposed on apartment units regardless of whether particular units were being rented, since it required that all nonexempt properties "'*will* be subject to regular inspection'" and that "'[o]wners of all buildings *subject to inspection shall* pay a service fee of $12.00 per unit per year.'" (*Apartment Association*, *supra*, 24 Cal.4th at p. 835, italics added).

5

*United Water Conservation Dist.* (2017) 3 Cal.5th 1191 (*San Buenaventura*). I am unconvinced that we can find *Apartment Association* abandoned.

In *Bighorn*, our Supreme Court was primarily concerned with the scope of another article in the California Constitution, article XIII C, but its discussion relied in part on a discussion of article XIII D from *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409 (*Richmond*). (*Bighorn*, *supra*, 39 Cal.4th at pp. 209, 214-216.) In one passage from *Richmond* recited in *Bighorn*, the court stated: "A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property. But a fee for making a new connection to the system is not imposed 'as an incident of property ownership' because it results from the owner's voluntary decision to apply for the connection." (*Richmond*, *supra*, at p. 427.)

This passage from *Richmond* supports a claim that a tax is unconstitutional "as an incident of property ownership" if its liability "requires nothing other than normal ownership and use of property." There is arguably a way to shoehorn plaintiffs' Measure U claim into that language: As appellants here own properties that include tanks that can be used as a wholesale liquid fuel storage facility, it is arguably a "normal" use of those properties to engage in the types of businesses listed in Measure U. However, any such construction would also have invalidated the tax at issue in *Apartment Association*. It is arguably a "normal" use of a property that includes rentable rooms to engage in the business of renting them, but the Supreme Court held a tax on such rooms was a tax

6

imposed as an incident of business ownership, not of property ownership. It is not at all clear that the Supreme Court was using "normal ownership and use" (which in *Richmond* characterized using water through an existing connection, which is something done on virtually every inhabited property) in such an expansive way, to encompass relatively uncommon property uses. Importantly, neither *Richmond* nor any other California Supreme Court decision repudiates (or even criticizes) *Apartment Association* in any way. Thus, it seems to me that we cannot properly construe the "normal ownership and use" language in *Richmond* in a manner that implicitly "abandons" *Apartment Association*.

In any event, the rest of the passage from *Richmond* is best read to adopt the reasoning of *Apartment Association*. *Richmond* stated that a tax on a "voluntary decision to apply for" a water connection is permissible because it is *not* imposed "'as an incident of property ownership.'" (*Richmond*, *supra*, 32 Cal.4th at p. 427.) This is consistent with *Apartment Association*, under which a tax is permissibly imposed when a property owner makes the voluntary decision to apply for (or renew) a business license because the levy is not imposed as an incident of property ownership. *Apartment Association* upheld a levy because the property owner could voluntarily choose not to engage in a business.

In *Pajaro Valley*, the other case plaintiffs cite as indicating that *Apartment Association* has been abandoned, the Court of Appeal considered whether a "groundwater augmentation fee" was imposed "'as an incident of property ownership'" for purposes of

7

article XIII D. (*Pajaro Valley*, *supra*, 150 Cal.App.4th at pp. 1369-1370.) In holding that it was, the court noted that our Supreme Court in *Bighorn* "did not mention [*Apartment Association*] at all," even though it seemed highly relevant to the question before the court. (*Pajaro Valley*, *supra*, at p. 1389.) The omission, according to *Pajaro Valley*, "raise[d] questions about the reach, if not the vitality, of *Apartment Association*." (*Ibid*.)

This method of reliance on the Court of Appeal opinion in *Pajaro Valley* is severely undercut by our Supreme Court's later decision in *San Buenaventura*. First of all, *San Buenaventura* rejected *Pajaro Valley*'s holding concerning the proper characterization of groundwater charges. (*San Buenaventura*, *supra*, 3 Cal.5th at pp. 1206-1207 [comparing a split between *Pajaro Valley* and the decision under review and "conclud[ing] that the Court of Appeal in this case has the better of the argument."]). *San Buenaventura* thus disapproved of *Pajaro Valley* to the extent it was inconsistent with the case that split with it.[3] (*San Buenaventura*, *supra*, at p. 1209, fn. 6.) More importantly for our purposes, however, *San Buenaventura* repeatedly cited and relied upon *Apartment Association* (e.g., *San Buenaventura*, *supra*, at p. 1204), thus dispelling any question *Pajaro Valley* had about the "vitality" of *Apartment Association* (*Pajaro Valley*, *supra*, 150 Cal.App.4th at p. 1389). Simply put, *Pajaro Valley* does not stand for the proposition that *Apartment Association* has been "abandoned," as plaintiffs contend.

---

[3] Plaintiffs here relied on *Pajaro Valley* without noting that it was disapproved by *San Buenaventura* and consequently made no effort to address whether they rely on a part of *Pajaro Valley* that remains good law after *San Buenaventura*.

Further, it is difficult to conclude that *Apartment Association* has been abandoned when *San Buenaventura*—the most recent Supreme Court opinion interpreting Article XIII D, decided less than two years ago—relies upon it. *Apartment Association* currently is good law, and we are bound by its rationale here.

The majority opinion sets aside *Apartment Association*, not by relying on case law, but by reading Measure U as triggered by "the mere act of owning" storage tanks. (Maj. opn. *ante*, at p. 17.) If the tax enacted by Measure U is triggered by mere ownership, and not by the decision to engage in a business, then the majority is correct that it is "a tax on real property" subject to article XIII D. (Maj. opn. *ante*, at p. 17.)

In order to read Measure U as being triggered by mere ownership, however, the phrase "engaged in the business of" would have to be discarded entirely from Measure U. In *Apartment Association*, the requirement of being engaged in a certain business was inferred, yet it was dispositive. That is, the tax there was imposed on those who owned property that included an apartment building, yet the tax was valid because the Supreme Court presumed that the tax was imposed on landowners only "by virtue of their ownership of a business" and would not be imposed if they owned the property but did not engage in business. (*Apartment Association*, *supra*, 24 Cal.4th at p. 842.)

In Measure U, the requirement is express. Although the majority concludes that Measure U is subject to article XIII D "because Measure U taxes the bare storage capacity of a facility's storage tanks" (maj. opn. *ante*, at pp. 16-17), how the tax is *measured* differs from the circumstances under which the tax is imposed. Just because

9

the tax is measured by capacity does not mean that it is imposed even if the owner is not engaged in a business. Under the text of Measure U, if a person ceases to be "engaged in the business of owning[,] operating, leasing, supplying or providing a wholesale liquid fuel storage facility," that person simply cannot be liable for the tax, regardless of how that tax is measured.

To be sure, the word "owning" appears in Measure U. But the use of the word "owning" in Measure U does not justify disregarding the phrase "engaged in the business of" as superfluous. Both are terms that identify on whom the tax enacted by Measure U is imposed: "[E]ngaged in the business of" means that one must be a part of a certain type of business activity, and "owning" a wholesale liquid fuel storage facility is one aspect of being involved in the business. Each term has effect. Saying that tax liability is triggered if one is "engaged in the business of owning" a wholesale liquid fuel storage facility is not the same as saying that liability is triggered merely by owning such a facility. The subjects of the inspection fee in *Apartment Association* were "engaged in the business of owning" apartment buildings, but the Supreme Court approved the levy because they could (at least in theory) avoid it by choosing to be mere owners who are not engaged in that particular business.

In sum, I believe *Apartment Association* is binding authority, and I cannot find a rationale that invalidates Measure U under article XIII D while preserving the fee measured by apartment capacity that our Supreme Court approved. Under *Apartment Association*, Measure U is not imposed "as an incident of property ownership" because

10

tax liability cannot exist if the property owner does not engage in a business enumerated in Measure U.

## II.  THE CITY GUIDELINES

The City's council may not "amend" Measure U, but it may "implement" it. Elections Code section 9217 provides that "[n]o ordinance that is . . . adopted by the voters, shall be repealed or amended except by a vote of the people, unless provision is otherwise made in the original ordinance."  Similar prohibitions exist as to initiatives passed at the county and state level.  (See Elec. Code, § 9125 [county]; Cal. Const., art. II, § 10, subd. (c) [state].)  Here, Measure U provides only that "[t]he City Council may, by resolution, adopt administrative regulations or policies to implement" it.

"An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision."  (*People v. Cooper* (2002) 27 Cal.4th 38, 44.)  "'[L]egislative enactments related to the subject of an initiative statute may be allowed' when they involve a 'related but distinct area' [citation] or relate to a subject of the initiative that the initiative 'does not specifically authorize *or* prohibit.' [Citation.]"  (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 830.)

Plaintiffs challenge two policies in the City's Guidelines.  The first, entitled "Operators Not Engaged in the Business of Operating a Facility," states in part that "[i]t is the intent of the City that the business license tax be levied only in circumstances where an operator of a wholesale liquid fuel storage facility (a 'Facility') is actually

11

engaged in the business of operating the Facility." It further states that "[f]or the purposes of Measure U, an operator of a Facility shall be deemed 'not engaged in the business of operating the Facility' in a given calendar year if no liquid fuel shall be stored in the Facility at any given time in the applicable calendar year."

This policy does not constitute an amendment to Measure U. The policy does nothing more than implement Measure U by explaining how the City will determine whether the taxpayer is "engaged" in a business subject to Measure U. The interpretation thus provides a safe harbor that a business may rely upon in determining whether it will need to pay the tax, by providing that, if no fuel is stored in a wholesale liquid fuel storage facility during a calendar year, it will be deemed as not "engaged" in any business subject to the Measure U tax. For example, a large business with tank facilities in another county could choose to use only those other facilities to store fuel during a calendar year and not owe the tax that year. Similarly, a tank business winding down could attempt to end its operations before the next calendar year in order to ensure it would not owe the tax that year.

In viewing this policy as an amendment, the majority (it seems to me) again overlooks the phrase "engaged in the business of" in Measure U. Measure U does not, as the majority states, "impose[] the Measure U tax on *all* wholesale liquid fuel storage facilities, including facilities in which no amount of liquid fuel is stored, during a calendar year." (Maj. opn. *ante*, at p. 12.) Rather, Measure U imposes a tax on all owners (and operators, lessors, etc.) of a wholesale liquid fuel storage facility *if* and *so*

12

*long as* such persons are engaged in a certain business. By providing one circumstance where that standard will be deemed as not met, the Guidelines add no provision to, and take away no provision from, Measure U. (See *People v. Cooper*, *supra*, 27 Cal.4th at p. 44.)

The second policy at issue similarly does not modify any of Measure U's terms. That policy, entitled "Multiple Operators of a Facility," states that "[i]t is the intent of the City that the business license tax collected with respect to a Facility equal, in sum, only a maximum of $1.00 per cubic foot of the Facility" and that "[t]o the extent there are multiple operators of a Facility, the operators may allocate the total business license tax amongst themselves, such that the total business license tax paid shall equal only the business license tax that would be due for such Facility if it had only one operator."

This policy allows multiple persons or entities who are engaged in the facility's business to allocate Measure U liability among themselves. In capping Measure U liability at $1 per cubic foot, any one person subject to the tax on a single facility remains liable for "*up to*" $1 per year for each one cubic foot of liquid fuel storage capacity. (Italics added.) If Measure U provided, for instance, that *every* person engaged in an enumerated business must pay *exactly* $1 per cubic foot, then perhaps no allocation among operators could occur, and this policy would constitute an improper omission or substitution of Measure U's terms. Rather, this policy "relate[s] to a subject of the initiative that the initiative 'does not specifically authorize *or* prohibit'" (*County of San Diego v. San Diego NORML*, *supra*, 165 Cal.App.4th at p. 830) and is therefore valid.

13

The majority states that this second policy impermissibly limits the persons liable for the tax to "operators" only. (Maj. opn. *ante*, at pp. 12-13.) It does not do so; nothing in this policy provides or suggests that anyone who is not an operator of a fuel storage facility is exempt from the tax. Instead of providing that nonoperators are not liable for the Measure U tax, this policy simply has no applicability to them. Accordingly, this policy does not limit who is liable for the Measure U tax.

### III. CONCLUSION

I see no way around applying *Apartment Association* and conclude that under that case's reasoning, Measure U is not a tax imposed "as an incident of property ownership" and thus is not unconstitutional under article XIII D. Because the majority holds otherwise, it understandably declines to address plaintiffs' additional arguments that Measure U is invalid based on the proportionality requirements of Government Code section 37101, subdivision (b), the commerce clause, and related provisions of the California Constitution. If the views expressed in this dissent had attracted a majority, these additional arguments would merit some discussion, to explain why I find them unpersuasive. For present purposes, however, it is necessary only to explain in detail why I part ways with the reasoning of the majority opinion. Because I would find no constitutional or other infirmity with Measure U or the Guidelines adopted by the City of Rialto's counsel regarding Measure U, I respectfully dissent.

RAPHAEL
J.

14