Filed 2/2/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAYMOND PLATA et al., | |
| Plaintiffs and Appellants, | G060385 |
| v. | (Super. Ct. No. 2014-1-CV-258879) |
| CITY OF SAN JOSE, | O P I N I O N |
| Defendant and Appellant. | |

Appeals from a judgment of the Superior Court of Santa Clara County, Thomas E. Kuhnle, Judge. Affirmed in part and reversed in part.

McManis Faulkner, James McManis, Matthew Schechter, Tyler Atkinson and Hilary Weddell for Plaintiffs and Appellants Raymond and Michelle Plata.

Richard Doyle, City Attorney, Nora Frimann and Ardell Johnson, Assistant City Attorneys, Kathryn Zoglin and Margo Laskowska, Deputy City Attorneys for Defendant and Respondent City of San Jose.

Hanson Bridgett, Adam W. Hofmann and Sean G. Herman, as Amicus Curiae on behalf of The League of California Cities.

**INTRODUCTION**

In 1996, California voters passed Proposition 218, also known as the Right to Vote on Taxes Act, as an amendment to the California Constitution. (See *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 CalApp.4th 637, 640.) This measure was intended to fortify Proposition 13, the landmark 1978 ballot measure which required local governments to obtain supermajority consent from the electorate in order to enact any special property tax. (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 836 (*Apartment Assn.*).) By way of Proposition 218, the voters of California added "'assessments, fees, and charges'" to the list of taxes which had to be approved through a vote. (*Id.* at p. 837, quoting *Howard Jarvis Taxpayer Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 682.) Proposition 218 added articles XIII C and XIII D to the Constitution. (*Ibid.*)

Article XIII D, subdivision 6 provides the procedures and criteria by which a local government can lawfully impose or increase any fee or charge, as those terms are defined in the article. (Cal. Const., art. XIII D, § 6.) The government agency must first identify parcels upon which the fee or charge will be imposed and conduct public hearings. (*Id.,* subd. (a).) And, in part, it must ensure revenues to be obtained from the fees do not exceed the cost of providing service and are not used for any purpose aside from that for which the charge was imposed. (*Id.,* subd. (b).)

A significant body of case law has developed around the application of Proposition 218 in the area of water services. In fact, this is not our first assay of the topic. In *Capistrano Taxpayers Assn., Inc. v. City of San Juan Capistrano* (2015) 235 Cal.App.4th 1493 (*Capistrano*), we considered the allowable measures a public water agency could take to pass on costs of capital improvements and increased water consumption. The latter aspect of our ruling was influential in the trial court proceedings below. Today we are asked to review the constitutionality of a tiered rate structure similar to that at issue in *Capistrano*.

But it turns out we cannot reach that issue. Unlike *Capistrano*, which was always about how people should be charged for water, this case from the very beginning has been about *misuse of the revenues so collected* – in the form of millions of dollars' worth of transfers between the water agency, the San Jose Municipal Water System (or, as the parties call it, Muni Water[1]), and the City of San Jose (the City). The trial court found for the City on all of these transfers, and we uphold its ruling in that respect. We reverse only to the extent the trial court permitted the rate payers to expand the scope of their claim dramatically on the eve of trial to include the tiered rate issue. That issue is not properly before us.

## FACTS

Appellants Raymond and Michelle Plata are property owners in the City and customers of Muni Water. Muni Water provides water service to over 26,000 metered customer connections in the area. The City has owned and operated Muni Water for approximately 60 years.

Muni Water's annual budget is reflected each year in a document called a source and use of funds statement, which is part of the City's annual operating budget. The fund allocated for Muni Water revenues and charges is Fund 515.

On November 4, 2013, the Platas filed with the City a claim pursuant to Government Code sections 910 and 910.2. In the claim, they accused Muni Water of violating Proposition 218 *ab initio* – that is, since its passage in 1997 – by collecting money from customers and illegally transferring it to the City's own general fund. In essence, they said, the City used Muni Water revenues not for operational costs associated with water service, but for general purposes. So, the argument went, these transfers depleted Muni Water's own cash reserves and customers were required to pay

---

[1] We adopt the parties' and the trial court's naming convention for purposes of clarity.

3

higher rates than they otherwise would have in order to make up the difference. The claim asserted the unlawful practice continued through the 2013 to 2014 fiscal year.

The City rejected the claim on November 12, 2013, and so in January 2014, the Platas brought a class action lawsuit. They sought declaratory and injunctive relief against the City under Proposition 218, as well as recovery of the amounts overpaid.[2]

On February 3, 2015, the Platas filed an amended and supplemental complaint which folded in an additional government claim they had lodged with respect to the 2014 to 2015 fiscal year.[3] The City rejected that claim on November 6, 2014. Thereafter, the Platas filed two more government claims, one on October 21, 2015, with respect to the 2015 to 2016 fiscal year, and the other on December 1, 2016, with respect to the 2016 to 2017 fiscal year. These subsequent claims became the subject of two more lawsuits. Only the lawsuit concerning the 2015 to 2016 fiscal year was consolidated with the present action. Thus, for all intents and purposes, 2016 marks the end of the relevant factual timeframe in this case. In June of 2015, the trial court granted the Platas' motion to serve as lead plaintiffs in a class of "[a]ll past and current customers of the San Jose Municipal Water System who have paid for water service from the San Jose Municipal Water System since January 1, 1997."

The Platas have isolated five categories of transfers within the City's budgets over the years which they claim were unlawful. The first is late fees charged to customers who do not pay their water bill on time. The second is amounts transferred to service the debt incurred in the financing of city hall and related structures and appurtenances. The third is so-called "enterprise in lieu" transfers; these transfers represent fees the City would otherwise charge a private utility to provide a similar

---

[2]     Causes of action alleged in the original complaint were: (1) violation of article XIII D of the California Constitution, and (2) declaratory relief. In addition to a refund and declaratory and injunctive relief, the Platas sought general and special damages as well as attorney fees.

[3]     The amended and supplemental complaint's causes of action remained the same as in the original complaint.

4

service. The fourth is "rate of return" transfers, or transfers the City made from Muni Water to compensate the City for investing in the Muni Water system instead of investing the funds elsewhere. And the fifth is transfers made to the City to compensate it for overhead costs. As the issues are framed in this appeal, we need only address the first, third, and fourth categories.

In September 2017, only a few weeks before trial was set to begin in the matter, the parties filed a joint pretrial statement in which the Platas seemingly introduced two new issues into the trial mix: (1) "[w]hether the City's use of tiered water rates violated Section 6" of article XIII D of the California Constitution, and (2) "[w]hether the City charges Muni Water customers based on the cost of providing water service to their parcel."

Not long after this revelation, the City filed a motion to decertify the class, arguing the addition of the "new theories" destroyed any community of interest between the class members, as well as the other elements necessary for class certification. The issue was also highlighted amongst the City's numerous motions in limine. The City contended neither theory had been mentioned in the Platas' government claims or in their pleadings.

After a lengthy bench trial, the trial court issued a statement of decision making – among many – the following determinations pertinent to our inquiry. First, the late fees charged by Muni Water were not a fee or charge covered by Proposition 218. Second, any claims accruing prior to November 4, 2012 were time-barred because of the statute of limitations provided under Government Code section 911.2, and there was no basis for applying any equitable tolling doctrine. (The three bases proffered by the Platas were delayed accrual, estoppel, and continuing violation, but they only raise the third in this appeal.)

As for tiered water rates, however, the trial court found the discussion of high rates in the Platas' government claims adequate to give notice to the City that its rate

5

structure was being questioned. It found the tiered rate structure did not comply with Proposition 218, but it was unable to award the Platas any relief because they did not show individualized harm. The court also noted "[a] more significant complication" raised by the City in its class decertification motion. The tiered rate structure would impact different class members differently from month to month, thus making it potentially "impossible" to draw a "line between 'winners' and 'losers' based on monthly water consumption[.]" It granted the City's motion to decertify the class, and refused to grant the Platas any relief as to their tiered rate argument.

**DISCUSSION**

The Platas appeal four aspects of the trial court's ruling. First, they think the trial court erred in determining late fees were not governed by Proposition 218. Second, they feel the trial court should have awarded relief on their tiered rate theory, or should at least have allowed them the opportunity to present evidence of individualized harm. Following from this is their third argument: the class should not have been decertified based on the tiered rate theory because there was no significant change in circumstances to warrant it. And finally, the trial court incorrectly applied the statute of limitations to bar any recovery with respect to rate of return and enterprise in lieu transfers. The City appeals the trial court's ruling on tiered rates to the extent it allowed the theory to be aired at all, for the reasons mentioned above. We think the City is correct, and thus, we need not linger long on the Platas' second and third arguments.

**I.        Standard of Review**

The characterization of fees and charges under Proposition 218 is a question of law which we give independent review. (See *City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1204 (*San Buenaventura*); *Apartment Assn., supra,* 24 Cal.4th at p. 836.)

The trial court's application of the statute of limitations to undisputed facts is subject to independent review, but where "a fact-intensive exception to the statute [i]s

6

at issue," any underlying factual findings are reviewed for substantial evidence. (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 930, fn. 3 (*Daneshmand*).)  We also independently review the trial court's ruling that the City had received fair notice of the claim under the Government Claims Act.

**II.          Late Penalty Charges**

The Platas argued Muni Water violated Proposition 218 criteria by charging late penalty charges which could not be tied to any cost of providing water.  The trial court did not think these charges needed to comply with those criteria.  It was correct.

Proposition 218 requirements apply to "fees" or "charges."  (Cal. Const., art. XIII D, § 6, subd. (b).)  A "fee" or a "charge" is "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service."  (Cal. Const., art. XIII D, § 2.)

The dispute here focuses on the phrase "imposed by an agency upon a parcel or upon a person as an incident of property ownership."  Thankfully, as the Supreme Court itself has noted, construing it does not require us to "write on a clean slate."  (*San Buenaventura, supra,* 3 Cal.5th at p. 1204.)

The first time the high court considered this phrase was in *Apartment Association*, which involved an inspection fee imposed on private landlords.  (*Apartment Assn.*, *supra*, 24 Cal.4th at p. 833.)  The court ruled this did not constitute a fee or charge under Proposition 218 because it was not incident to ownership.  Plaintiffs were charged for renting their property out, not for owning it.  Once they ceased renting it, the fee ceased as well, regardless of whether ownership remained the same.  (*Id.* at pp. 838, 840.) Thus, from *Apartment Assn.*, we know "taxes, assessments, fees, and charges are subject to the constitutional strictures when they burden landowners *as landowners*," and not in any other capacity.  (*Id.* at p. 842.)

7

Similarly, in *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409 (*Richmond*), the court considered a $400 fire suppression charge imposed on all applicants in the Shasta County water district for new service connections. (*Id.* at p. 416.) While it agreed "that water service fees . . . may be fees or charges within the meaning of article XIII D," it did not "agree that *all* water service charges are necessarily subject to" the restrictions provided therein. (*Id.* at p. 427.) The charge must be imposed "'as an incident of property ownership,'" which means nothing else is required except "normal ownership and use of property." A new connection fee such as this requires an additional voluntary step by the property owner: the "decision to apply for the connection." (*Ibid.*, quoting Cal. Const., art. XIII D, § 2, subd. (e).) The court felt its view was bolstered by article XIII D, subdivision (a). (*Id.* at pp. 427-428.) To comply with subdivision (a), the government agency must "identif[y]" the "parcels upon which a fee or charge is proposed for imposition," and it must "calculate[]" the "fee or charge proposed to be imposed upon each parcel[.]" (Cal. Const., art. XIII D, § 6, subd. (a).) An agency would be unable to do this for new connection charges, the court noted, as it would not be able to "determine in advance which property owners will apply for water service connection." (*Richmond*, *supra*, 32 Cal.4th at p. 428.)

*Richmond*'s analysis was applied in *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205 (*Bighorn*). There, the court invalidated a proposed ballot initiative which would have not only reduced water rates but also required the water agency to obtain voter approval before increasing rates further or charging new fees. (*Id.* at pp. 209-210.) In examining the validity of the initiative, the court found "a public water agency's charges for ongoing water delivery" were fees and charges under section XIII D because they were "user fees" for "a property related service." (*Id*. at pp. 216-217, quoting Cal. Const., art. XIII D, § 2, subd. (e).) It noted this conclusion was in line with the distinction drawn in *Richmond* between charges for new connections versus charges for existing ones. (*Id.* at p. 215.) "Accordingly, once a property owner or

8

resident has paid the connection charges and has become a customer of a public water agency, all charges for water delivery incurred thereafter are charges for a property-related service, whether the charge is calculated on the basis of consumption or is imposed as a fixed monthly fee." (*Id.* at p. 217.)

Most recently, in *San Buenaventura, supra*, the Supreme Court examined whether groundwater pumping charges constituted a fee or charge for a "property related service," and concluded they were not fees. (*San Buenaventura*, *supra*, 3 Cal.5th at pp. 1207-1208.) The text of article XIII D requires fees to be proportionate to the cost of providing services to individual parcels. Thus it stands to reason that a fee or charge must comply with article XIII D "if it is imposed on a property owner, in his or her capacity as a property owner, to pay for the costs of providing a service to a parcel of property." (*Id.* at p. 1208.) The groundwater charges in question were for purposes of conservation and management of groundwater, which is not delivered to particular parcels of property. (*Ibid.*)

Based on these authorities, the analysis of late penalty charges seems straightforward to us. These charges do not burden landowners as landowners – as *Apartment Association* and its progeny contemplate – but landowners as delinquent bill payers. An owner will not incur a late penalty charge merely through ownership and normal use of property, as *Richmond* states, but through an additional act – or in this case, omission: failing to pay his or her bill by the due date. This issue is, in our view, dispositive. Without the benefit of a crystal ball, Muni Water cannot identify in advance which property owners will become delinquent on their bills. Thus, it would be unable to

9

calculate a per-parcel charge and notify those property owners of a public hearing as it would be required to do under article XIII D, section 6, subdivision (a).[4]

The Platas believe *Bighorn* and *San Buenaventura* support their position because those opinions stressed that all post-connection charges for water delivery were encompassed by article XIII D. But late penalty charges are not charges for water delivery, they are charges for money non-delivery, for failure to pay the bill. They are charged, as one of the City's accountants testified, to incentivize customers to pay their bills on time. They have nothing to do with water usage any more than failure to pay your Mastercard bill has to do with the dinner you put on your card. They are not "fees" as contemplated in the constitutional definition.

A final entreaty by the Platas is that the trial court's ruling creates a late penalty charge loophole in Proposition 218 because it would allow the City to raise revenue through a so-called penalty. They remind us that we raised such a specter in *Capistrano*. (See *Capistrano*, *supra*, 235 Cal.App.4th at p. 1515). But that is where the similarities end. In *Capistrano*, the water agency attempted to justify its tiered rates as penalties for excessive consumption. (*Ibid.*) We observed such a rationale could be used to create pricing structures with no discernible relationship to the cost of service, thus "mak[ing] a mockery of the Constitution." (*Ibid.*) Here, the penalty in question is not tacked to water rates and is not dependent on a customer's usage. It is charged if *and only if* a customer fails to pay his or her bill in a timely fashion. Any suggestion the District might someday attempt to raise revenue by encouraging non-payment fails the straight-face test. We never intended in *Capistrano* to circumscribe a local government's

---

[4] The Platas do not find this an insurmountable hurdle, arguing the City could and does simply notify *all* Muni Water customers about late fees. Such an interpretation would render subdivision (a) nugatory and we reject it. If it were sufficient to notify all customers of a fee or charge, there would be no need to *identify* parcels upon which the charge would be imposed. (Cal. Const., art. XIII D, § 6, subd. (a)(1).) And there would be no need to calculate the amount of the fee *per parcel*. (*Ibid.*)

10

ability to recoup collection costs through penalties, and we reject the idea that was its effect. We uphold the trial court's ruling as to late penalty charges.

## III.         Tiered Rate Structure

Relying on *Capistrano*, the trial court found Muni Water's tiered rate structure does not withstand constitutional scrutiny because the City did not perform a proportionality analysis to understand how the tier prices relate to the actual cost of providing water at those levels of consumption. Before we can consider the tiered rate scheme, however, we must address the City's cross-appeal. Satisfactory presentation under the Government Claims Act (GCA) and fair notice under the rules of civil procedure are threshold issues. And in our estimation the Platas never get across that threshold.

### A.         Government Claims Act (Gov. Code, § 810 et seq.)

The Platas could not bring a suit "for money or damages" against the City without properly presenting a claim first. (See Gov. Code, §§ 905, 945.4.)[5] The City and its amicus curiae argue none of the Platas' government claims identify or "fairly describe" the tiered rate structure as an issue. After careful consideration, we agree.

Amongst other details, a proper government claim must contain "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (See Gov. Code, § 910, subds. (c) & (d).) The purpose of the claim presentation requirement "is 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of

---

5       The Platas refuse to concede the GCA applies to the dispute, but it seems clear to us. While the trial court ultimately determined they could not recover damages under Proposition 218's scheme, the fact remains that their prayer for relief requested general and special damages. By the Platas' own framing of the dispute from the beginning, the GCA applied. Had the trial court decided damages *were* recoverable, surely the Platas would have accepted them.

11

litigation.' (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.) . . . As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions (*Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 225), the claims statute 'should not be applied to snare the unwary where its purpose has been satisfied' (*Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74)." (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 446 (*Stockett*).)

"If the claim is rejected and the plaintiff ultimately files a complaint against the public entity, the facts underlying each cause of action in the complaint must have been fairly reflected in a timely claim. (*Nelson v. State of California* (1982) 139 Cal.App.3d 72, 79.) '[E]ven if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim.' (*Ibid.*) [¶] The claim, however, need not specify each particular act or omission later proven to have caused the injury. [Citation.] A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.' (*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 278.) Only where there has been a 'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim,' have courts generally found the complaint barred. [Citation.] Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint. (*White v. Superior Court* (1990) 225 Cal.App.3d 1505, 1510–1511.)" (*Stockett, supra,* 34 Cal.4th at p. 447.)

The line between causes of action fairly reflected in, or absent from, a government claim is – like so many things in the law – highly context-dependent. The question is whether the new facts are "sufficiently related to those alleged in the

12

[government] claim." (See *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 279.) Sufficiency of relationship will always be a difficult analysis to conduct. In *Stockett*, our high court expanded on the factual divergence theme, finding additional detail in a complaint was not fatal because the claimant's new theories did not represent new causes of action, a point which the defendant conceded in the trial court. (*Stockett*, *supra*, 34 Cal.4th at p. 447.) But here, we have both new facts *and* a new cause of action.

The Platas' government claims fairly describe a two-pronged theory. The first prong encompasses the City's purportedly illegal transfer of revenues out of Fund 515 into Fund 001. The second prong encompasses the allegedly "inflated" rates customers were charged to make up for the transfers. The claim asserted the rates were "pegged higher than necessary" and cited Proposition 218's prohibition on charging fees which exceed the cost of the service. The claims provided the City with notice that, in part, its rates, and the bases for them, were being questioned. The complaint filed thereafter tracked the language in the claims.

But we do not believe this was enough to put the City on notice that its tiered rate structure was being attacked. Rates are quite a broad subject.[6] The claim and complaint framed inflated rates for customers overall as an effect of the unlawful transfers – that is, as Muni Water's cash reserves were depleted, the money had to be made up in the rates. As a result, the City was on notice that it would have to explain the basis for increases that occurred while it was drawing down from Fund 515. So the GCA claim distilled to, "You're using the money for the wrong purposes and making up for it by inflating our rates." It was not "Your rate system tiers are illegal."

---

[6]     This case exemplifies the necessity for a clear factual structuring of claims under the GCA. While a claim could conceivably be quite broad in scope, there is a point at which the scope is too broad to provide the notice necessary to allow the public entity to feasibly and timely investigate the claim. A charge of inflated rates alone no more necessarily implicates a tier structure than a dangerous condition of property claim alone necessarily implicates poor lighting (see *Turner v. State of California* (1991) 232 Cal.App.3d 883, 888-889) or horseplay of schoolchildren. (See *Fall River Joint Unified School Dist. v. Superior Court* (1988) 206 Cal.App.3d 431, 434.) Plaintiffs need not include every detail in their claim, but they must give the public entity enough information to understand its basic factual underpinnings.

13

The tiered rates challenge therefore, represents a whole new litigation frontier. Such a theory necessarily involves an analysis of whether and to what extent the cost of delivering water increases with customer usage. Justifying rates by this metric requires wholly different evidence. We recognized this in *Capistrano*, finding the water utility therein had to not only "balance its total costs of service with its total revenues" to justify its rate tiers, but "also . . . correlate its tiered prices with the actual cost of providing water at those tiered levels." (*Capistrano*, *supra*, 235 Cal.App.4th at p. 1506.) Subdivision (b)(1) covered the former, but subdivision (b)(3) covered the latter. And satisfying each subdivision is a different endeavor. [7]

Another rather conspicuous wrinkle in the Platas' litigation fabric is their own understanding of their claim: they themselves seemingly never understood the tier structure to be at issue. Notably, they do not say the words "tiered rates" or implicate subdivision (b)(3) in their claim or in their pleadings.[8] Their motion for class certification in April 2015 stated their lawsuit "challenge[d] the City's systematic and illegal *use* of Muni Water funds." (Italics added.) It said nothing about challenging their *collection.*

From the beginning of discovery in this case, the City gave the Platas opportunities to describe the basis for their claim regarding rates. The Platas' responses continued to assert their claim was based on the illegal transfers and that the discussion of rates was only relevant to explain how the City was recouping the transferred funds. Even when they were asked what they believed they were overcharged, or what rates they

_____

[7]   The trial court understandably used our decision in *Capistrano* as a guide in rejecting the City's notice argument. It noted the language in the Platas' claims "frame[d] tiered rates in almost exactly the same way as *Capistrano* framed its analysis of tiered rates." But this is a major point of divergence between our case and *Capistrano*. *Capistrano* was always, from government claim onward, a case about article XIID, subdivision (b)(3). The tiered rate structure was the immediate focus of the case. Here, it was not.

[8]   This was probably why the City did not demur to the complaints on this ground, as the Platas' counsel pointed out at oral argument. It was not because the City acquiesced to the tier structure being part of the case. Quite the opposite – at the pleading stage, the City was not even *aware* the tier structure was being challenged.

14

should have paid, they repeated the same allegations from the claim and the complaints, and asserted that *all* amounts they paid to Muni Water were overpayments. They asserted the City had violated article XIII D, subdivisions (b)(1) and (2).

The Platas point to July 2017 – two months before trial – as a time they raised the issue specifically when they sought the deposition of the City's person most qualified on several topics, including the basis for the tier structure. Tellingly, the City's counsel then asked the Platas' counsel why they had asked for a deponent on the topic, an odd question if everyone knew it to be an issue. The Platas' counsel told her they had not challenged the tier structure up to that time, but still wanted the information. It was not until the filing of the joint pretrial statement that the City realized the tier structure was at issue. That was too late to comply with the letter or the spirit of the GCA.

The trial court felt another piece of evidence showing the City had been apprised of the theory was some wording lifted from the earlier class certification order.[9] In opposing the Platas' motion for class certification, the order said, the City had argued that individual factors would predominate when determining harm, including "the amount of water and charges at each tier during each billing period." But in the line directly following, the trial court made a crucial observation – those individual factors "go to damages, not liability." Quite right. Simply because the City had recognized that the tier structure might impact class members' *damages* did not mean it or the court the recognized the tier structure *per se* was under attack. Clarity on such issues is especially critical in Proposition 218 cases because the Constitution places the burden on the government to show compliance with its requirements. The government cannot do this if claimants are not specific.

Based on the record before us, the City was justified in believing both the government claim and the lawsuit turned on the transfers and late penalty charges. And

---

9       The motion for class certification was heard and ruled upon by a different judge than the one who presided at the bench trial.

15

even though the claim and the pleadings may have suggested rates in general as a point of contention in the future, discovery had shown the focus of the litigation to be the transfers and their downstream impact – so to speak – on customers. This appears to have been both sides' understanding of the case. Thus, the trial court abused its discretion in permitting the Platas to "assert not merely a new theory, but liability on an entirely different state of facts[.]" (See *Shelton v. Superior Court* (1976) 56 Cal.App.3d 66, 82-83.) Allowing the Platas to expand the scope of issues on the eve of trial undermined the purpose of the GCA, and we therefore reverse the aspect of the judgment pertaining to tiered rates, which renders moot the Platas' contention that they should have been awarded relief with respect to this theory.[10]

## IV. Statute of Limitations

Any claim against a public entity related to a cause of action that is not for personal injury or property damage must be presented "not later than one year after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).) "'A period of limitations ordinarily commences at the time when the obligation or liability arises, regardless of the plaintiff's ignorance of the cause of action. [Citation.]' [Citation.]" (*Daneshmand, supra,* 60 Cal.App.5th at p. 936.)

Here, the trial court barred recovery premised on violations taking place before November 4, 2012, exactly one year before the filing of the Platas' first government claim. This ruling effectively eviscerated their claims for the rate of return and enterprise in lieu transfers, which had ceased three years prior to their first government claim. The Platas therefore argue such claims are not time-barred because the City continues to unlawfully use the transferred revenues so the statute has not run; accrual has been continuous. We think substantial evidence supports the trial court's finding.

---

[10] Even if notice of the claim was sufficient, we agree with the trial court that there was a complete failure of proof as to the amount of restitution conceivably owed.

16

Between 1997 and 2009, the City made millions of dollars in rate of return and enterprise in lieu transfers between Fund 515 and its general fund, Fund 001. These transfers were mentioned in the City's adopted operating budgets, which were a matter of public record. There is no dispute that both those types of transfers ceased, at the latest, in 2009.

Once transferred to Fund 001, the funds were not separately tracked or earmarked as being from Muni Water.[11] Consequently, at trial, neither side was able to trace exactly how or when the funds from those transfers were spent. Nevertheless, the Platas presented an accounting expert, Robert Knudsen, who opined that it was possible for the transferred funds to still be in Fund 001. Since the balance in Fund 001 never fell below $27 million between 1998 and 2016, and the overall amount of money transferred in enterprise in lieu, rate of return, and late charge fees between 1998 and 2016 was approximately $25 million, Knudsen surmised at least *some* of the transferred funds might still be in the account.

In further support of this theory, the Platas refer us to *Bank of America National Trust & Savings Association v. California Savings & Commercial Bank* (1933) 218 Cal. 261 and *Ennis-Brown Company v. Richvale Land Company* (1920) 47 Cal.App. 508. We join the City in its confusion regarding the relevance of these authorities. Both cases dealt with private commodities transactions in which the plaintiffs had either pledged or advanced funds and were entitled to their return or reimbursement. The present situation is very different. The class members did not specially pledge money to the City and had no expectation of being reimbursed at the time of payment.

The Platas also argue it was the City's burden to show the funds had all been used prior to November 4, 2012. But clearly the trial court felt the City had met this burden. The City offered its own accounting expert, Everett Harry, who took issue with

---

[11]    It is important to note that the concept of "transfer" in this context refers not to an actual transfer of funds between depositary accounts, but rather an accounting transfer – a transfer on the books.

Knudsen's characterization of the funds. He claimed Knudsen had used a "Last In First Out" method of inventory accounting to determine that the wrongfully transferred funds would be the last to be exhausted. However, one could just as easily use a "first in first out" approach, which would mean the funds that had been sitting in the account longest would be the first to be expended.

He raised three other questions with respect to Knudsen's opinion. First, Knudsen began his analysis July 1997, which is the earliest Proposition 218 could have been in effect. The amount in Fund 001 at that time was $96 million. But Knudsen did not analyze whether any of this $96 million was earmarked for other purposes. Second, he noted Knudsen was giving "special priority" to water money in assuming it was first in and thus, last out. He saw no reason to do that. Third, he said Knudsen started with the wrong data point. Knudsen should have added the wrongfully transferred amounts to the starting balance in Fund 001 (approximately $96 million) in order to determine a baseline below which the fund balance would have to drop to consider all of the water funds exhausted. The starting balance in Fund 001 was $96,235,875. Adding this amount to the $25 million wrongfully transferred means the baseline is more like $120 million, not $25 million. And the City fell below $120 million several times over the years. The City's expert was thus able to undermine Knudsen's theory.[12] The trial court was within its province to believe him over Knudsen, and we defer to its credibility determination.[13]

---

[12] The trial judge also seemed a bit skeptical of Knudsen's reasoning, asking him "It's true either way; right? You don't know if those funds are in there or they could be there. There's no way to know, one way or the other, because they're not earmarked."

[13] And it was not just a witness credibility determination. The statement of decision indicates the trial court itself viewed the Platas' continuing use theory with great skepticism. The trial court made an analogy between Fund 001 and a personal checking account through which paychecks pass and expenses are paid: "While the balance of the account might not fall below $3000 at any time in a given year, the funds that pass through the account might be 12 times higher. In this regard, one would never say 'my January paycheck wasn't used this year because my checking account balance remained higher than the amount of that paycheck.' A more common response would be, 'My January paycheck was used to pay for my February expenses.'" This seems not only a reasonable analysis but one longer on common sense than the Platas' assay.

18

Since the Platas succeeded on none of their claims, we need not address the trial court's order decertifying the class, which – while facially sound – was based on circumstances related to the addition of the tiered water rate theory, which we conclude should not have been in play.

## DISPOSITION

The judgment is reversed only as to the trial court's findings on the tiered rate structure. In all other respects, it is affirmed. The City of San Jose shall recover its costs on appeal.


BEDSWORTH, ACTING P. J.

I CONCUR:


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19

Moore, J., Concurring and Dissenting:

I concur with most of the majority opinion. Unlike the majority, however, I agree with the trial court and conclude plaintiffs' governmental claim did place defendant on notice that its rate structure was being challenged. A government claim need only point the public entity in the right direction by giving a general description of the claimed loss. (*Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority* (2004) 34 Cal.4th 441, 445-446.) Here, the government claim implicated water rates. That it didn't state the magic words "tiered rates" is of no import. (Maj. opn., *ante*, p.14.) The city was on notice that its rating system was being challenged.

Nonetheless, I agree with the majority there was a failure of proof of damages. Thus, the adequacy or inadequacy of the governmental claim makes no difference.


MOORE, J.


1